**Thomas D. BLONDIN, Jared J. Scharf, and Steven L. Snyder, Petitioners,**

v.

**Honorable Fred M. WINNER, United States District Judge for the District of Colorado, Respondent.**

**UNITED STATES of America, Plaintiff-Appellant,**

v.

**William A. KILPATRICK, Defendant-Appellee.**

**Nos. 84–1231, 83–2284.**

United States Court of Appeals, Tenth Circuit.

July 20, 1987.

Francis J. Blanchfield, Jr. of Johnson & Blanchfield, P.A., Charlotte, N.C., for petitioners.

Denis H. Mark of Waller, Mark & Allen, P.C. (William C. Waller, on the brief), Englewood, Colo., for defendant-appellee.

Glenn L. Archer, Jr., Asst. Atty. Gen., and Michael L. Paup, Robert E. Lindsay, and Alan Hechtkopf, Attorneys, Tax Div., Dept. of Justice, Washington, D.C., submitted a brief for plaintiff-appellant.

Lawrence W. Treece of Bender & Treece, P.C., Denver, Colo., submitted a brief for amicus curiae American Civil Liberties Union Foundation of Colorado.

Leonard B. Boudin of Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, submitted a brief for amicus curiae Nat. Emergency Civil Liberties Committee.

Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and BOHANON,* District Judge.

SEYMOUR, Circuit Judge.

These cases arise from a federal district judge's publication of a memorandum opinion and his subsequent refusal to withdraw it or to delete from it information identifying three Justice Department attorneys. In case number 83–2284, *United States v. Kilpatrick*, the Government appeals the order denying its motion to withdraw or modify the opinion, and in the alternative seeks a writ of mandamus. Case number 84–1231, *Blondin v. Winner*, is an original

* Honorable Luther L. Bohanon, Senior District Judge, Western District of Oklahoma, sitting by designation.

action by the three individual attorneys requesting mandamus relief. We conclude that the district court order is not appealable and that petitioners have not shown that they are entitled to an extraordinary writ.

## I.

## BACKGROUND

A chronology and description of these convoluted proceedings is essential to our discussion of the arguments presented to this court. On September 30, 1982, after an extensive investigation of tax shelters set up by William Kilpatrick, a federal grand jury returned a twenty-seven count indictment against Kilpatrick, six other individuals, and the Bank of Nova Scotia. Twenty-six of the counts charged Kilpatrick and others with conspiracy, mail fraud, and/or tax fraud. Count twenty-seven charged Kilpatrick with obstruction of justice. Steven Snyder and Thomas Blondin, attorneys with the Tax Division of the Justice Department, had presented the evidence to the grand jury. Jared Scharf, another Tax Division attorney, had been involved in the investigation before and after the indictment was filed.

On February 21, 1983, Judge Kane dismissed the first twenty-six counts for failure to state a crime, and the Government appealed. In May 1983, with Judge Winner presiding, Kilpatrick was convicted by a jury on count twenty-seven. Snyder, Blondin, and Scharf prosecuted the case.

Kilpatrick filed post-trial motions for a new trial and for dismissal of the indictment on the basis of prosecutorial misconduct by Snyder, Blondin, and Scharf in the grand jury proceedings and after indictment. Hearings on these motions were held before Judge Winner July 12 through July 15. The Government was on notice long before the July hearing that the testimony of Snyder, Blondin, and Scharf was necessary to resolve the allegations of prosecutorial misconduct. The record also

indicates that Judge Winner repeatedly expressed his concern to these three attorneys that they could not ethically continue to represent the Government in a proceeding in which they were required to testify. Nonetheless, when the hearing began, Scharf appeared for the Government.[1] Upon questioning by the court, Scharf refused to withdraw, telling the court that the Justice Department attorney from Washington who would subsequently represent the Government was not yet familiar enough with the case to be competent. Although Scharf actively participated in the taking of testimony the morning of July 12, following the lunch break he announced that he could no longer represent the Government. The court pointed out that Scharf had known about the problem for quite some time, and that witnesses had been called and time had been set aside. Consequently, the court decided to continue taking evidence. However, the court also stated that the Government would be allowed transcripts of the testimony and would be permitted to recall witnesses for cross-examination.

During the proceedings that afternoon, a local assistant United States attorney, who was apparently present at the proceedings in an unofficial representative capacity, appeared for the Government to point out to the court that a witness who had testified was still in the courtroom and to request that he be sequestered. Defense counsel then asked whether a motion to sequester had been made. The court responded that if the Rule had been invoked, it would apply to all witnesses, including the three Tax Division attorneys. The Government did not object to this ruling and the Tax Division attorneys were excluded, although Blondin was allowed to remain as the advisory witness for the Government. The court subsequently pointed out that the sequestered attorneys were precluded from reading the transcripts of testimony taken while they were not permitted to be present.

---

1. Thomas Blondin was also present but the Government had apparently conceded that he

could not appear on its behalf.

The following day, July 13, the Government was represented by the replacement attorney from the Justice Department and the hearing continued.[2] On July 14, the district judge stated that he wanted Snyder put on and that he would run nights and Saturday if necessary. Rec., vol. 7, at 394. The judge later repeated his desire to hear testimony from Snyder and Scharf promptly to learn their version of what had happened. *Id.* at 630. The Government attorney responded that he was not ready to put them on and implied that he would be ready in mid-August when the hearings were scheduled to resume. *Id.* at 630–32. On July 15, the court commented on the nature of the evidence and again encouraged the Government to put on these witnesses. Rec., vol. 8 at 787. The hearing was then recessed until August 16, 1983.

On August 8, at defendants' request, this court partially remanded the appeal of the dismissal of the first twenty-six counts of the indictment to permit the district court to consider whether all the counts should be dismissed on the basis of prosecutorial misconduct. When the hearing recommenced on August 16, the judge stated that, in view of the partial remand and his imminent retirement from the bench, he would not be able to rule on the motion to dismiss. He also stated that he intended to write a memorandum opinion on the proceedings thus far to aid the district judge who would ultimately decide the issue. Rec., vol. 9, at 869. The judge reiterated that he planned "to write a memorandum summarizing, without ruling on anything having to do with the motion to dismiss, but summarizing the positions of the parties, the accusations that are made, and the denials that are made to those accusations." *Id.* at 874. When the Government indicated that it would not put on Snyder or Blondin,[3] the court again recommended that they testify, observing that their testimony was vital and that their absence "casts the entire thing in a poor light." *Id.* at 994.

On August 17, the judge again expressed his desire to hear Snyder's testimony, pointing out that although he wanted to write a reasonably complete memo, the memo could only be based on the testimony presented. Rec., vol. 10, at 1209. The Government attorney stated that he understood and would not expect anything else, but nonetheless did not call Snyder as a witness. The court then pointed out that because Snyder and Blondin were both in Denver, taking their testimony at that time would be efficient. *See id.* at 1210. Finally, in response to a question by the Government attorney, the judge clearly indicated that the memorandum he was going to write would likely be for publication. *See id.* at 1269.

The district judge did write a published memorandum opinion in which he granted Kilpatrick's motion for a new trial, described the evidence presented on the issue of prosecutorial misconduct, and ordered that the transcripts of the grand jury proceedings be made available to defense counsel. *See United States v. Kilpatrick,* 575 F.Supp. 325 (D.Colo.1983). That opinion has generated the cases presently before this court. Following publication of the opinion and the district court's refusal to withdraw or amend it, the Government filed its appeal/petition and sought emergency relief in this court pending our decision on the merits. After delaying action on the Government's emergency motion long enough to give the other parties time to respond, we denied emergency relief on January 24, 1984.

A ten-day hearing on defendants' motion to dismiss the entire indictment for prosecutorial misconduct was subsequently held before Judge Kane. In a published opinion, Judge Kane dismissed the indictment, referring to much of the same evidence that had been set out in Judge Winner's memorandum. *See United States v. Kilpatrick,* 594 F.Supp. 1324 (D.Colo.1984).

---

**2.** Contrary to petitioners' assertion in their brief, the record reveals that no testimony was taken that day until the replacement counsel arrived.

**3.** Jared Scharf had been called as a witness by Kilpatrick and cross-examined by the Government on July 15.

The Government appealed. This court reversed, concluding that although misconduct had occurred, it had not affected the independent judgment of the grand jury, and that such an effect was a prerequisite to dismissal. *See United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir.1987).

## II.

### APPEALABILITY

■ This court has jurisdiction to hear appeals from final decisions of the district court. *See* 28 U.S.C. § 1291 (1982). "To be final and appealable, the district court's judgment must end the litigation and leave nothing to be done except execute the judgment." *First Bank v. Albuquerque Nat'l Bank (In re Glover)*, 697 F.2d 907, 909 (10th Cir.1983). Although recognizing that the order at issue here does not end the litigation, the Government nonetheless contends that the decision is appealable because it is a collateral order within the meaning of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). "To come within the 'small class' of decisions excepted from the final-judgment rule by *Cohen,* the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). The Supreme Court has cautioned that the collateral order doctrine "is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430–31, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985).

Assuming that the district court's order finally determined the publication and content of its opinion, and even assuming solely for argument that the *propriety* of the court's recitation of and comments on the evidence is an issue completely separate from the merits, we cannot say that "denial of immediate review would render impossible any review whatsoever." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 376, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981) (quoting *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971)). It is the content of the opinion that is at the heart of this appeal. However, the opinion clearly stated that the record to date was incomplete, that the court was making no findings on the asserted prosecutorial misconduct, and that additional hearings in district court on the issue would be forthcoming. Such a preliminary recitation of allegations and evidence is by its nature subject to review and correction through later proceedings. We therefore conclude that the order is not appealable under *Cohen* and its progeny.[4]

## III.

### MANDAMUS

In the alternative, the Government and the individual petitioners assert that they are entitled to a writ of mandamus. "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 189, 66 L.Ed.2d 193 (1980). To ensure that the writ is issued only in exceptional cases, the Supreme Court requires that a party seeking this relief "have no other adequate means to attain the relief he desires" and show that his "right to issuance of the writ is 'clear and indisputable'". *Id.* at 35, 101 S.Ct. at 190 (quoting *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953)); *see also Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 654 (10th Cir.1984).

■ Petitioners here have failed to offer any ground upon which their right to

---

4. We note that, in a related context, the Supreme Court has held that an attorney's interest in immediate vindication of an alleged erroneous finding of misconduct is insufficient to establish the appealability of an interlocutory order. *See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 432–35, 105 S.Ct. 2757, 2762–63, 86 L.Ed.2d 340 (1985) (order disqualifying counsel in civil case not immediately appealable).

relief is clear and indisputable. They contend that they were denied due process because they were not forwarned that they should put on evidence. This assertion is flatly contradicted by the record, which establishes that the district judge repeatedly sought testimony from the attorneys who are petitioners here, told Government counsel numerous times that he would write a memorandum setting out the evidence presented, and stated that his opinion would likely be published. Petitioners also assert due process denials arising from the Government's alleged inability to cross-examine some witnesses effectively and from the sequestration order. As set forth in Part I, these circumstances were the product of the Government's own actions in the hearings, and the Government made no objection below on these grounds. Indeed, the Government was actually at an advantage by having transcripts of the witnesses' direct testimony to use between the July and August hearings in preparing its cross-examination.

■ Petitioners also assert that they are entitled to mandamus relief because the district court's discussion of the evidence of prosecutorial misconduct was not relevant to the issues it decided. In its opinion, however, the court ordered disclosure of the grand jury transcripts to defense counsel. The Federal Rules of Criminal Procedure allow the court to permit disclosure "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Fed.R.Crim.P. 6(e)(3)(C)(ii). The decision to release the transcripts and the determination whether a sufficient showing has been made are matters committed to the trial court's discretion. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979); *United States v. Warren*, 747 F.2d 1339, 1347 (10th Cir. 1984). In refusing to amend his memorandum, the judge indicated that he felt the recitation of evidence was necessary to

support his decision to order disclosure. When the challenged action is one involving the exercise of discretion, mandamus relief is particularly inappropriate. *See Daiflon*, 449 U.S. at 36, 101 S.Ct. at 190.

■ Finally, petitioners argue vigorously that they are entitled to the writ because the district court opinion was defamatory.[5] However, the district court specifically stated that it was only setting forth the evidence presented to date, that it was making no findings, and that further proceedings would follow.

> "Because [an] additional hearing is required, I shorten discussion of most of the claims of prosecutorial misconduct, but I shall comment briefly on them. Frequently I will phrase the charges as if the facts had been established, but I emphasize that I am not saying that the facts have been proven. I am just adopting the practice of the government in phrasing an indictment in language saying that thus and so are the facts. I am only phrasing the defendant's charges against the government in the same way the government phrases its charges against a defendant, and the fact that the charges are made is not evidence that they are true, nor do I find that they are."

*Kilpatrick*, 575 F.Supp. at 332. Thus the memorandum by its own language warns the reader that the opinion must be read in light of the extent, if any, to which it may be inconsistent with subsequent opinions.

Moreover, asking this court to issue a writ of mandamus directing a district judge to withdraw or to expunge portions of a published opinion raises issues under the First Amendment even more serious than those that prompted this court to deny the Government request for temporary emergency relief. Petitioners have failed to offer any arguments or authorities that adequately dispel the grave constitutional concerns their petition raises. Their right to

---

5. Petitioners also assert that the district judge was biased and should have recused himself. No motion to recuse was filed below. In any event, petitioners have since obtained the appropriate relief through their subsequent full hearing on prosecutorial misconduct before another judge.

relief on this ground is hardly clear and indisputable.

At oral argument, counsel for petitioners conceded that petitioners could not ask this court to order the district court to withdraw publication, and instead requested us to issue an opinion commenting on the propriety of the district court's memorandum. Such relief would be essentially indistinguishable from the relief provided by an opinion on the merits after appeal. Petitioners' interest in their reputations was subject to vindication by the contemplated further proceedings, which would necessarily ascertain the validity of the charges and the evidence set out in the memorandum at issue. Simply put, petitioners are not entitled to this mandamus relief for the same reason we have no appellate jurisdiction—the alleged harm from the district court's order was remediable below or on appeal because it was inextricably intertwined with the merits of the alleged prosecutorial misconduct. Mandamus is not appropriate unless the petitioner has "no other adequate means to attain the relief he desires." *Daiflon,* 449 U.S. at 35, 101 S.Ct. at 190.

In sum, petitioners have failed to make a sufficient showing of their right to relief, and we therefore deny the petition for a writ of mandamus. In so doing, we recognize that the feelings of all participants in these proceedings have run high. Those participants would have been wise had they heeded the counsel offered by Judge Breitenstein in *Lane v. Wallace,* 579 F.2d 1200, 1203 (10th Cir.1978):

> "[J]udges should be ever mindful of the words of Francis Bacon in his essay on 'Judicature.' ...
>
> > 'Judges ought to be more learned than witty; more reverend than plausible; and more advised than confident. * *
> > Patience and gravity of hearing is an essential part of justice; and an over-speaking judge is no well tuned cymbal.'
>
> Expressed in modern parlance, a judge should not talk too much. Bacon also said ...

> 'And let not counsel at the bar chop with the judge, nor wind himself into the handling of the cause anew after the judge hath declared his sentence * * * *.'
>
> The meaning is that an advocate should not protest too much."

The appeal is dismissed and the petition for a writ of mandamus is denied.