SELYA, Circuit Judge.
This case presents a question of first impression in this circuit: Are a trial court’s published findings of attorney misconduct, originally rendered in support of monetary sanctions, independently appealable, notwithstanding that the monetary sanctions imposed by the court for that conduct have been nullified? Our sister circuits are divided on this important question. Compare Bolte v. Home Ins. Co., 744 F.2d 572, 572-73 (7th Cir.1984), with Walker v. City of Mesquite, Tex., 129 F.3d 831, 832-33 (5th Cir. 1997). We conclude that the court’s findings, simpliciter, are not appealable. Hence, we dismiss the instant appeals for want of appellate jurisdiction.
*88 I. BACKGROUND
In 1990, Lawrence G. Williams filed a voluntary petition in bankruptcy. During the bankruptcy proceeding, the United States filed proofs of claim seeking roughly $6,500,-000 in unpaid federal taxes (resulting primarily from the disallowance of deductions claimed by the debtor). Williams responded that an offer of settlement made by the Internal Revenue Service (IRS) and accepted by him in 1989 substantially reduced his tax liability from the amount stated in the proofs of claim. As Williams described it, the settlement proposal was coincident with the resolution of Tax Court proceedings involving the Arbitrage Management Partnerships (the partnerships), a group of tax shelters in which he had invested.
To test the parties’ competing positions, and to fix the amount and dischargeability of his outstanding federal income tax liability, Williams filed an adversary action against the United States within the bankruptcy proceeding. Following the initiation of this action, the parties undertook discovery. At about this time, Charles J. Cannon, an attorney in the Tax Division of the United States Department of Justice, entered his appearance on behalf of the United States. On April 30, 1991, Williams served a formal demand for production of documents. The United States had thirty days to respond to this demand, see Fed.R.Civ.P. 34(b), but failed to take timely action. On June 10, Williams moved to compel production. At that point, the government produced some documents and objected to the production of others. The bankruptcy court (Votolato, J.) convened a hearing on the motion to compel, overruled the government’s objections, and ordered it to produce the remainder of the disputed documents within forty-five days.
The government produced some, but not all, of the specified documents within the allotted time. In April 1992, the debtor filed a motion for partial summary judgment claiming that, for several of the relevant tax years, the government had not produced documents relating to either (1) extensions of the statute of limitations, or (2) the partnerships’ tax audits. The bankruptcy court denied the motion.
The debtor then moved, on much the same grounds, to preclude the government from introducing certain documents at trial. See Fed.R.Civ.P. 37(b)(2)(B). In its response, the government argued that it had provided all documents in its possession relating to the statute of limitations. The government admitted that it had not produced the partnerships’ audit files, but maintained that the debtor had never formally requested them. Because the parties were trying to settle the adversary action, the bankruptcy court did not schedule a hearing on the preclusion motion until January 1995. At that session, the court heard considerable evidence (much of it conflicting), entertained oral argument, and reserved decision.
In an opinion dated April 14, 1995, the bankruptcy court denied the preclusion motion, but imposed Rule 37(b) sanctions on the government, Cannon, and William L. Blagg (an IRS attorney who had assisted Cannon in endeavoring to respond to Williams’s discovery requests) for failing timely to produce the partnerships’ audit files and certain other documents. See In re Williams, 181 B.R. 1, 5 (Bankr.D.R.1.1995) (Williams I). In the course of this opinion, Judge Votolato harshly criticized Blagg and Cannon, characterizing their conduct as obstructionist and unjustified. Among other things, he referred to Blagg’s testimony as “pure baloney,” id. at 4, and ranked Cannon’s “performance and credibility at about the same level as [Blagg’s],” id. at 5. As a sanction, the judge ordered Blagg and Cannon each to pay $750 (and not to seek indemnity from their employer), and ordered the government to reimburse Williams for attorneys’ fees incurred in obtaining the documents. See id.
Blagg, Cannon, and the government moved for reconsideration. Judge Votolato issued another opinion on October 24,1995, in which he vacated the monetary sanction against Blagg, but refused to vacate either the sanction imposed on Cannon or his findings with respect to the lawyers’ conduct. See In re Williams, 188 B.R. 721, 725-28 (Bankr.D.R.I.1995) (Williams II). He did, however, order that Cannon pay the sanction amount ($750) to the debtor as a reimbursed expense, rath *89 er than to the registry of the court. See id. at 731.
Blagg, Cannon, and the government appealed to the United States District Court for the District of Rhode Island. The district court (Lisi, J.) agreed that Blagg and Cannon had conducted themselves improperly, but found for technical reasons that sanctions could not be imposed under Rule 37(b)(2).[1] In re Williams, 215 B.R. 289, 301-02 (D.R.I.1997) (Williams III). The district court therefore annulled the monetary sanction against Cannon. See id. at 302. The district court nonetheless refused to vacate the bankruptcy court’s factual findings, i.e., criticisms of the attorneys made in the course of its opinion. See id. at 303. These appeals ensued. In them, Blagg and Cannon seek vacation of the bankruptcy court’s findings — nothing more.
II. ANALYSIS
The threshold question in this matter is whether the bankruptcy judge’s published findings of fact, attributing misconduct to Blagg and Cannon, are appealable. The answer depends on whether the findings, simpliciter, comprise a decision, order, judgment, or decree. See 28 U.S.C. § 158(d) (1994) (conferring appellate jurisdiction over “all final decisions, judgments, orders, and decrees” rendered by a district court on appeal from a bankruptcy court); id. § 1291 (1994) (granting jurisdiction over “appeals form all final decisions of the district courts”). We conclude that they do not, and therefore dismiss the attorneys’ appeals.
At the outset, it bears reemphasis that, while the bankruptcy court’s opinions, including its criticism of the attorneys, remain intact, there are no longer any monetary sanctions extant in this case. The bankrupt-cy court itself vacated the monetary sanction imposed on Blagg, see Williams II, 188 B.R. at 728, and the district court annulled the monetary sanction levied against Cannon, see Williams III, 215 B.R. at 302. The instant appeals thus hinge on the legal significance of the bankruptcy court’s published findings of fact.[2] In the district court, Blagg and Cannon., argued, inter alia, that these findings in themselves operated as a sanction (particularly since the bankruptcy judge memorialized them in published opinions). The appellants therefore requested that the findings be stricken, both because they received insufficient process and because their conduct was not sanctionable. Judge Lisi assumed arguendo that the findings operated as a sanction, but found neither a procedural nor a substantive defect. See Williams III, 215 B.R. at 303. She harbored “no qualms” about the bankruptcy court’s findings, having satisfied herself that they were supported by the record. Id. Before us, the appellants purport to appeal these linguistic “sanctions” on much the same bases that they advanced below and ask that we vacate the relevant findings of both lower courts.
Imposing sanctions against counsel is a serious matter. Hence, when a federal court deems such a course appropriate, it must make specific findings in support of its order. See, e.g., Navarro-Ayala v. Nunez, 968 F.2d 1421, 1427 n. 5 (1st Cir.1992); Foster v. Mydas Assocs., 943 F.2d 139, 142-43 (1st Cir.1991). Such findings serve a variety of salutary purposes; among other things, they enable a reviewing court to determine whether the sanctions imposed have sufficient grounding in law and in fact. See Foster, 943 F.2d at 141-42. In this case, the bankruptcy court’s findings were both explic *90 it and unflattering, and the appellants understandably take issue with the court’s depiction of their conduct.
Still, it is an abecedarian rule that federal appellate courts review decisions, judgments, orders, and decrees—not opinions, factual findings, reasoning, or explanations. See Navieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.Bd 304, 316 (1st Cir.1997); Sun-Tek Indus. v. Kennedy Sky Lites, Inc., 856 F.2d 173, 176 (Fed.Cir. 1988); Bolte, 744 F.2d at 573; W.W. Windle Co. v. Commissioner, 550 F.2d 43, 45-46 (1st Cir.1977). Blagg and Cannon attempt to evade this rule by artful characterization. The imposition of a sanction on an attorney is universally regarded as an order, and, if an appellate tribunal has jurisdiction to review such an order,[3] its examination will encompass the underlying findings. See, e.g., Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 11-12 (1st Cir.1995). Invoking this truism, Blagg and Cannon posit that the bankruptcy court’s harshly worded findings are tantamount to a sanction in the form of a public reprimand and, therefore, ground appellate jurisdiction. We do not agree.
Although the appellants regard the findings as injurious to their professional reputations, their earlier success has compromised their ability to press the point. The bankruptcy court chose to impose monetary sanctions, not a reprimand, in response to the perceived misconduct.[4] See Williams I, 181 B.R. at 5. These sanctions have now been ameliorated. See Williams II, 188 B.R. at 728 (withdrawing monetary sanction previously levied against Blagg); Williams III, 215 B.R. at 302 (vacating monetary sanction levied against Cannon). Because no sanction remains, we lack jurisdiction to consider the propriety of the offending findings. See Sun-Tek Indus., 856 F.2d at 176 (explaining that, although appellate courts may scrutinize findings in tandem with the review of judgments, they “do not review findings independently”); W.W. Windle Co., 550 F.2d at 45 (emphasizing that appellate jurisdiction over Tax Court decisions does not permit review of “findings and rulings ... apart from their effect upon the decision”).
The appellants derive no succor from their victories. They insist that the bankruptcy court’s findings besmirch their professional reputations to such an extent that they operate as a de facto sanction. The lower courts could have vacated the challenged findings coincident to granting relief from the monetary sanctions themselves, but neither tribunal exhibited an inclination to do so.[5] For our part, we are not unsympathetic to the appellants’ plaint. It is trite, but true, that a lawyer’s professional reputation is his stock in trade, and blemishes may prove harmful in a myriad of ways. Yet not every criticism by a judge that offends a lawyer’s sensibilities is a sanction. Read in context, the bankruptcy court’s descriptions of the attorneys’ behavior in this case plainly were not the sanction itself, but, rather, served to justify the imposition of monetary sanctions. See Williams I, 181 B.R. at 5. Nowhere in his rescript does Judge Votolato issue an express reprimand or otherwise intimate that a tongue-lashing comprises any part of the designated penalty.
*91 Blagg and Cannon offer a contrary characterization of Judge Votolato’s opinion. They and the amici seize upon the unarguable fact that reprimands are included in the armamentarium of sanctions from which a judge may select if he or she purposes to punish attorney misconduct. See Bank of Nova Scotia v. United States, 487 U.S. 250, 263, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); United States v. Horn, 29 F.3d 754, 766-67 (1st Cir.1994); see also Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse 259, 496, 539 (2d ed.1994). Building on this foundation, they argue that, even if a judge does not designate his comments as a formal reprimand, harsh words that reflect adversely on a lawyer’s professionalism always should be treated as a reprimand (and, therefore, as a sanction). This argument invites us to draw a line between routine judicial commentary on a lawyer’s performance (presumably non-appealable) and commentary that is inordinately injurious to the lawyer’s reputation (presumably appealable). We decline this invitation on multiple grounds.
Practically speaking, any rule that purports to transform harsh judicial words into a “de facto sanction” will be almost impossible to cabin. After all, attempting to distinguish “ordinary” findings from “extraordinary” ones by differentiating between degrees of abrasiveness can only proceed on an ad hoc basis. We are unable to formulate a test— and the appellants have offered none — that would provide any meaningful guidance to the lower courts and the bar as to when commentary crosses the line and becomes a sanction.
This same vice characterizes the approach taken by our dissenting colleague. Judge Rosenn seemingly focuses on discerned intent. See, e.g., post at 96 (suggesting that findings, simpliciter, are an appealable sanction as long as they are “specifically intended as punishment for misconduct”); id. at 98 (suggesting that findings, simpliciter, are not an appealable sanction as long as “they are not intended to punish or deter”). But a rule that routinely puts a judge’s subjective intent in issue is fraught with peril. Lawyers— especially lawyers who have been roundly criticized — almost always will suspect the worst. We fear that permitting anything less than a formal reprimand to form the predicate for an appeal will be an invitation to litigation (and considerable wheel spinning) over what may be challenged and what not.
Equally as important, if injury to reputation is the guiding precept, as the appellants and the amici suggest, there is no principled basis for distinguishing between a chastised attorney and any other participant in the judicial process who becomes the target of the presiding judge’s opprobrium. As Judge Posner astutely noted, under such a regime, “[ljawyers, witnesses, victorious parties, victims, bystanders — all who might be subject to critical comments by a district judge— could appeal their slight if they could show it might lead to a tangible consequence such as a loss of income.” Bolte, 744 F.2d at 573. Thus, accepting a de facto sanction theory like that advanced by the appellants and the amici would presage “a breathtaking expansion in appellate jurisdiction.” Id.
Another practical problem arises from the reality that appeals from findings often will be unopposed. After all, the parties to a case usually are interested in the decision, order, judgment, or decree, and not in the findings (except to the extent that they relate to the decision, order, judgment, or decree). So it is here: the debtor, understandably, has not seen fit to spend time and money on an issue that has no bottom-line implications for him. This means, of course, that a reviewing court will hear only one side of the story, and will be deprived of the balanced adversarial presentation that is so helpful to the proper functioning of the appellate process.
The policy implications of the appellants’ argument also militate against its adoption. The net result would be tantamount to declaring open season on trial judges. If chastened attorneys can enlist appellate courts to act as some sort of civility police charged with enforcing an inherently undefinable standard of what constitutes appropriate judicial comment on attorney performance, trial judges are more likely to refrain from speaking and writing candidly. In our view, this chilling effect carries with it risks that *92 are far greater than those associated with the evil of occasional overheated judicial commentary. Judicial candor is a trait strongly valued, both generally and in the sanctions context, and discouraging it will serve only to erode public confidence in the courts. See Bruce M. Selya, The Confidence Game: Public Perceptions of the Judiciary, 30 New Eng. L.Rev. 909, 915 (1996). Indeed, the well-entrenched doctrine of absolute judicial immunity from liability for defamation is rooted in concerns about preserving judicial independence, effectiveness, and frankness. See, e.g., Pierson v. Ray, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871). Those same concerns are very much in play here. Cf. Blondin v. Winner, 822 F.2d 969, 974-75 (10th Cir.1987) (rejecting an aggrieved attorney’s petition for mandamus seeking to strike allegedly defamatory comments issued by a district judge and suggesting potential First Amendment implications of granting the petition).
These considerations of practice and policy conduce to the conclusion that a jurist’s derogatory comments about a lawyer’s conduct, without more, do not constitute a sanction. A trial judge has the obligation to assure the proper conduct of proceedings in his or her court, see Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); United States v. Polito, 856 F.2d 414, 418 (1st Cir.1988), and must retain the power to comment, sternly when necessary, on a lawyer’s performance without wondering whether those comments will provoke an appeal.
Bearing the burden of a judge’s unflattering remarks traditionally has been among the rigors associated with trial practice. While unfairness can and does occur, we fear that the appellants’ proposed cure would be more debilitating than the disease, in that it would, over time, reduce the judge to a kind of trial examiner, perceived as such by those practicing before him. We recognize that the best judges, like the best teachers, often exert control with perfect courtesy; but, even so, the sense of power held in reserve can be essential. Once we remove a judge’s power, it can never be restored. We cannot expect judges to preside effectively over discovery and trials, and yet routinely subject them to appeals from critical comments reflecting their displeasure with the conduct of those they are charged with controlling.
Let us be perfectly clear. Sanctions are not limited to monetary imposts. Words alone may suffice if they are expressly identified as a reprimand. See, e.g., Dawson v. United States, 68 F.3d 886, 894 (5th Cir.1995) (reviewing an order expressly imposing a reprimand and requiring the attorney to attend an ethics course). But see Clark Equipment Co. v. Lift Parts Mfg. Co., 972 F.2d 817, 820 (7th Cir.1992) (“[W]e have already decided that an attorney may not appeal from an order that finds misconduct but does not result in monetary liability, despite the potential reputational effects.”). But critical comments made in the course of a trial court’s wonted functions — say, factfinding or opinion writing — do not constitute a sanction and provide no independent basis for an appeal.[6]
Our holding does not leave a chastised attorney remediless. A lawyer is free to petition for a writ of mandamus, see 28 U.S.C. § 1651 (1994), and request that offending commentary be expunged from the public record. See, e.g., Bolte, 744 F.2d at 573; cf. Fromson v. Citiplate, Inc., 886 F.2d 1300, 1304 (Fed.Cir.1989) (observing that mandamus is a more appropriate means of deleting derogatory comments from a district court opinion, but interpreting Second Circuit law as implicitly permitting an appeal); Gardiner v. A.H. Robins Co., 747 F.2d 1180, *93 1188 n. 11, 1190-94 (8th Cir.1984) (employing mandamus to strike a trial judge’s withering, and unjustified, condemnation of identified corporate officers from the public record).
Our dissenting colleague attempts to minimize the utility of this remedy by noting that a court should not resort to mandamus “when it can exercise the same review by a contemporaneous ordinary appeal.” Post at 99 (quoting Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 8 n. 6, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). That, however, is precisely the point. In this type of situation, in which the ostensibly aggrieved lawyer seeks to challenge findings rather than the trial court’s decision, judgment, order, or decree, no contemporaneous appeal lies. Mandamus, therefore, is available to correct unwarranted judicial excesses of this nature. We caution, however, that mandamus must be employed sparingly. In line with the writ’s accustomed uses, it should be reserved for “those rare cases in which the issuance (or nonissuance) of an order presents a question anent the limits of judicial power, poses some special risk of irreparable harm to the appellant, and is palpably erroneous.” Horn, 29 F.3d at 769; accord Blondin, 822 F.2d at 973-74 (noting that mandamus relief is available to an attorney who wishes to expunge portions of a published opinion only where the “right to relief is clear and indisputable”).
We doubt that mandamus is proper here, but the question need not detain us. The appellants requested mandamus relief in the district court but never renewed that entreaty in this venue. Therefore, we deem the point waived.[7]
III. CONCLUSION
We need go no further. While the bankruptcy court’s criticism of the appellants in its two published opinions strikes us as unnecessarily strident, findings alone are not appealable. Thus, we dismiss the appeals for want of appellate jurisdiction. We add only a brief coda: if anything about this case is clear, it is that emotions have run particularly high throughout the course of litigation. Maintaining control over such charged proceedings is tough sledding, and trial judges must be granted “some margin of humanity” in performing that arduous task. Polito, 856 F.2d at 418.

Appeals dismissed.

. Sanctions under Rule 37(b)(2) may not be levied without the issuance, and subsequent violation, of a formal order under Rule 37(a). See R.W. Int’l Corp. v. Welch Foods, Inc., 937 F.2d 11, 19 (1st Cir.1991). The compulsion to produce the partnerships’ audit files, the failure to comply with which occasioned the monetary sanctions, was never memorialized in such an order. This omission precluded affirmance of the remaining sanction.

. To be sure, the appellants also excoriate the district court’s endorsement of, and elaboration on, the bankruptcy court’s unflattering comments. See Williams III, 215 B.R. at 302-03. This umbrage adds nothing to the jurisdictional equation, as the district court’s findings — like those of the bankruptcy court — are not accompanied by a sanction. Consequently, after a brief review of the district court's findings, we will focus on the bankruptcy court's findings. See Williams II, 188 B.R. at 725-27; Williams I, 181 B.R. at 2-5.

. A mid-case sanctions order may or may not be immediately appealable by an affected attorney. Compare Chaves v. M/V Medina Star, 47 F.3d 153, 155-56 (5th Cir.1995) (allowing interlocutoiy appeal of sanctions imposed on attorney), and Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 539 (3d Cir.1985) (similar), with Starcher v. Correctional Med. Sys., Inc., 144 F.3d 418, 423-24 (6th Cir.1998) (barring interlocutory appeal of sanctions imposed on attorney), and Appeal of Licht & Semonoff, 796 F.2d 564, 572-73 (1st Cir.1986) (similar). Because we find no sanctions order here, see text infra, we need not go down this road.

. Our dissenting brother suggests that the bankruptcy court “implied” that it intended its published findings, simpliciter, to operate as a sanction. See post at 96. This implication is totally unwarranted. Moreover, the fact that our brother feels free to draw the implication illustrates the limitless nature of the rule that he espouses; it always will be possible to argue that, despite the lack of any express reference to a reprimand, the judge must have intended one—or else he would not have been so critical.

. To the contrary, both Judge Lisi and Judge Votolato reiterated their belief that the appellants’ conduct during the litigation deserved condemnation. See Williams III, 215 B.R. at 303; Williams II, 188 B.R. at 725-27.

. We are conscious that this holding may be viewed by some as formalistic. Heavy-handed criticism of an attorney by a judge may exact a considerable price, even when the judge does not formally frame the criticism as a reprimand. This reality apparently drives our dissenting brother’s willingness to entertain appeals from findings alone, see post at 95-99 (Rosenn, J., dissenting), as well as the Fifth Circuit’s, see Walker, 129 F.3d at 832. Despite Judge Rosenn’s reasoned responses to our concerns and his arguments in favor of appellate jurisdiction in these circumstances, we remain unpersuaded. As for Walker, it fails to address our concerns specifically and we respectfully decline to follow it.

. Of course, a federal court of appeals in its discretion may treat an attempted appeal from an unappealable order as a petition for writ of mandamus to prevent injustice. See Horn, 29 F.3d at 769. Given the appellants’ apparently conscious decision to abandon their quest for mandamus relief and the lack of any evidence that the bankruptcy judge so clearly abused his discretion as to constitute "a judicial usurpation of power,” Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) (per curiam), we are not inclined to take such a step.