USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1413

 LINDA S. PHINNEY, ETC., ET AL.,
 Plaintiffs, Appellees,

 v.

 WENTWORTH DOUGLAS HOSPITAL, ET AL.,
 Defendants, Appellees,

 CRAIG PAULSHOCK, M.D.,
 Defendant, Appellant.
 ___________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 
 
 Edwinna C. Vanderzanden, with whom Sanders & McDermott,
P.L.L.C. was on brief, for defendant-appellant.
 Jared R. Green, with whom Mark A. Abramson and Abramson, Reis,
Brown, & Dugan were on brief, for plaintiffs-appellees.

December 8, 1999

 
 
 SELYA, Circuit Judge. After a magistrate judge
sanctioned defendant-appellant Craig Paulshock, M.D., for discovery
misconduct, he appealed unsuccessfully to the district court. He
now appeals to us, asserting that the district court misapplied the
standard of review and that the magistrate judge made clearly
erroneous findings of fact, exceeded his authority by allowing
"complex" medical testimony during the sanctions hearing,
improperly imposed sequestration, arbitrarily denied a continuance,
and misapprehended the burden of proof. For the reasons set forth
below, we affirm.
 The facts leading to the institution of suit are largely
unrelated to the issues on appeal. Suffice it to say that Kenneth
J. Phinney died during surgery and his widow (on her own behalf and
on behalf of his heirs and estate) invoked diversity jurisdiction,
28 U.S.C. 1332(a)(1), and brought a medical malpractice action
against a plethora of defendants, including Paulshock (the
attending anesthesiologist). In the course of pretrial discovery, 
Phinney requested certain information related to a particular
nurse-anesthetist, Elise Jackson (whom Paulshock had entrusted to
administer an anesthetic used in the operation). The defendants
produced some documents in response to this request, but they
failed to supply Jackson's most relevant personnel evaluation, at
first ignoring its existence and later, when Phinney learned of it,
claiming that they could not locate the sheet.
 To make a tedious tale tolerably terse, the finger of
suspicion eventually pointed to Paulshock, and Phinney amended her
complaint to allege that he had spoliated evidence. More than six
months after Phinney's original document request, Paulshock "found"
the evaluation sheet in his house. When he finally turned it over,
the document proved damning because it revealed that, prior to the
date of the surgery, Paulshock had criticized Jackson's skills and
questioned her integrity. This information not only strengthened
Phinney's case but also directly contradicted Paulshock's
deposition testimony.
 Citing this and other purported discovery abuses, Phinney
filed a motion for sanctions against a defense attorney and various
defendants (Paulshock included). Magistrate Judge Muirhead
conducted a five-day evidentiary hearing and dismissed several of
the charges. The one exception involving Paulshock related to the
Jackson evaluation. In that regard, the magistrate found Phinney's
allegations to be substantially true and ruled that Paulshock had
intentionally withheld the evaluation sheet and had prevaricated at
his deposition concerning its whereabouts. See Phinney v.
Paulshock, 181 F.R.D. 185, 200-02 (D.N.H. 1998). He ordered
Paulshock to pay a sizable monetary sanction to Phinney. See id.
at 205.
 Paulshock unsuccessfully moved for reconsideration and
then asked the district court to overturn the decision. He filed
only a general objection (in narrative form) and, when the district
court demanded a concise statement of the grounds undergirding it,
he responded at some length that certain findings, i.e., that he
withheld a document and then lied about it, were not substantiated
and should be set aside. The district court undertook clear-error
review and rejected Paulshock's asseverations in an unpublished
order.
 Paulshock secured new counsel and pressed forward, asking
us to rectify the situation. While this appeal was pending, we
learned that the underlying case had been settled and that, as part
of the settlement, the discovery sanction had been paid and
Paulshock had agreed not to seek recoupment. He had, however,
reserved the right to appeal the magistrate judge's factual
findings. We questioned whether this reservation was enforceable
or, in the alternative, whether the no-recoupment arrangement
rendered the appeal moot. Cf. Cordero v. De Jesus-Mendez, 867 F.2d
1, 21 (1st Cir. 1989) (explaining that once a "contempt order has
been complied with, no case or controversy remains," and a pending
appeal is no longer maintainable).
 We think that the jurisdictional question is close, but
we need not resolve it. Generally speaking, we have the power to
treat a notice of appeal as a request for a writ of mandamus. See
United States v. Horn, 29 F.3d 754, 769 (1st Cir. 1994); United
States v. Sorren, 605 F.2d 1211, 1215 (1st Cir. 1979). More
specifically, we have indicated in circumstances analogous to those
at bar that if we lack jurisdiction to entertain an appeal from
factual findings that potentially harm the putative appellant's
professional reputation, we may in our discretion treat the notice
of appeal as a petition for mandamus. See In re Williams, 156 F.3d
86, 93 n.7 (1st Cir. 1998), cert. denied, 119 S. Ct. 905 (1999). 
While we would not take this tack in, say, a case involving
chastisement resulting in mere embarrassment, or a case involving
an unlikely or unsupported claim of serious career damage,
Paulshock's appellate counsel represents that the disputed factual
findings already have caused severe collateral consequences and
will continue to cause such consequences. These representations
are sufficiently specific and detailed that we are prepared, if
necessary, to exercise our mandamus jurisdiction. We therefore
proceed to consider Paulshock's arguments. See Jamison v. Wiley,
14 F.3d 222, 234 (4th Cir. 1994) (adopting such a course); United
States v. Collamore, 868 F.2d 24, 27 (1st Cir. 1989) (same).
 From Paulshock's viewpoint, this victory is short-lived. 
It is a firmly settled rule that a party's appeal of a magistrate
judge's order to the district court delimits his right to further
appellate review. See Thomas v. Arn, 474 U.S. 140, 147 (1985);
Keating v. Secretary of HHS, 848 F.2d 271, 274-75 (1st Cir. 1988)
(per curiam); see also Malave v. Carney Hosp., 170 F.3d 217, 222
(1st Cir. 1999) (remarking "the bedrock rule of appellate practice
that . . . matters not raised in the trial court cannot be hawked
for the first time on appeal"). The Civil Rules are quite explicit
on this point:
 Within 10 days after being served with a copy
 of the magistrate judge's order [on a
 nondispositive motion], a party may serve and
 file objections to the order; a party may not
 thereafter assign as error a defect in the
 magistrate judge's order to which objection
 was not timely made.

Fed. R. Civ. P. 72(a) (emphasis supplied). We hold, therefore,
that an objection to a magistrate judge's order must apprise the
district court of all the objector's claims of error, and new
claims of error on the part of the magistrate judge cannot
thereafter be raised in this court.
 This holding, straightforwardly applied, bars the
majority of Paulshock's arguments, as Paulshock failed to raise
them in his objection to the magistrate's order. Accordingly, we
confine our substantive analysis of the magistrate's order to the
sole issue that has been properly preserved: the supportability of
his factual findings.
 Like the district court, we review these factual findings
under the "clearly erroneous" rubric. See 28 U.S.C. 
636(b)(1)(A); Fed. R. Civ. P. 72(a). This means that we must
accept both the trier's findings of fact and the conclusions drawn
therefrom unless, after scrutinizing the entire record, we "form a
strong, unyielding belief that a mistake has been made." Cumpiano
v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990).
 In this instance, Magistrate Judge Muirhead's rescript
recounts in meticulous detail the evidence on which he based his
findings of fact. See Phinney, 181 F.R.D. at 190-95. Certain
uncontested facts lend support to his conclusion: it took
Paulshock eight months to produce the missing personnel evaluation
and, when produced, it turned out to have been in his possession
all along, despite his repeated statements that it could not be
found, that he did not know its whereabouts, and that others should
be queried. Moreover, the magistrate found, with record support,
that the ultimate production came only after Paulshock learned that
the plaintiff knew he had had the sheet at one time. See id. at
202. In sum, the magistrate's findings have deep and sturdy roots
in the record.
 To be sure, the evidence is not totally one-sided. 
Paulshock's counsel adroitly marshals the facts in a forgiving
manner, emphasizes Paulshock's explanation of what transpired, and
accurately notes that the key to the puzzle is Paulshock's
subjective intent. This Herculean effort falls short. Although a
party's continuing denials are entitled to some weight in
determining points within his personal knowledge, a trial judge is
not obliged to accept such protestations at face value. See
Aguilar-Solis v. INS, 168 F.3d 565, 570-71 (1st Cir. 1999) (stating
that when the judge "who saw and heard a witness makes an adverse
credibility determination . . . an appellate court ordinarily
should accord it significant respect"). While we, if writing on a
pristine page, might have resolved the critical issue of intent
differently, we cannot say that the magistrate committed clear
error in finding as he did. See United States v. Lara, 181 F.3d
183, 195 (1st Cir.) (explaining that "when the evidence gives rise
to competing interpretations, each plausible, the factfinder's
choice between them cannot be clearly erroneous"), cert. denied,
120 S. Ct. 432 (1999); see also Carr v. PMS Fishing Corp., 191 F.3d
1, 7 (1st Cir. 1999) (holding that, for the most part, credibility
determinations are grist for the trier's mill).
 We must touch one last base. The narrowness of
Paulshock's objection to the magistrate's adverse ruling does not
restrict his right to complain about what the district court
subsequently did (or failed to do). In this vein, he avers that
the district court compounded the magistrate's alleged error in two
respects. First, he contends that the district court should have
afforded the magistrate's order plenary review. His reasoning runs
along the following lines. The motion for sanctions sought (or,
alternatively, could have yielded) a variety of remedies, including
in an extreme case a default judgment. See United States v.
Palmer, 956 F.2d 3, 6-7 (1st Cir. 1992). In this sense, the motion
was potentially dispositive and thus (Paulshock says) the district
court should have reviewed the ensuing order de novo. This
reasoning is flawed.
 Congress enacted the Federal Magistrates Act in 1968. 
The 1976 amendments to the Act conferred explicit authority upon
district courts to designate magistrate judges to hear pretrial
motions. See 28 U.S.C. 636(b)(1). Congress placed an express
limitation on this authority, however, providing that certain
enumerated motions could not be determined by a magistrate. See
28 U.S.C. 636(b)(1)(A). Such motions may be referred to a
magistrate for "proposed findings of fact and recommendations for
. . . disposition," but must then be returned to the district judge
for final action. 28 U.S.C. 636(b)(1)(B).
 Each of the two classes of motions comes equipped with
its own standard of review. If a referred motion is within the
ambit of section 636(b)(1)(A) and not excepted (i.e., to be decided
by the magistrate), then the district court can revise it only when
a timely objection has been filed and "it has been shown that the
magistrate's order is clearly erroneous or contrary to law." 28
U.S.C. 636(b)(1)(A). If, however, the motion is excepted from
the customary operation of section 636(b)(1)(A) (i.e., to engender
only a magistrate's recommendation), the district court is
directed, upon the filing of a timely objection, to "make a de novo
determination of those portions of the report or specified proposed
findings or recommendations to which objection is made." 28 U.S.C.
 636(b)(1)(C). The court thereafter "may accept, reject, or
modify, in whole or in part, the findings or recommendations made
by the magistrate." Id.
 For many years, federal courts operated under the Federal
Magistrates Act without any further guidance. In 1983, however,
these statutory provisions were augmented by the adoption of Fed.
R. Civ. P. 72. In framing the rule, the drafters used the term
"[n]ondispositive matters" to refer to all matters (including
motions) that a magistrate judge can hear and determine, Fed. R.
Civ. P. 72(a), and the term "[d]ispositive motions" to refer to
those motions as to which a magistrate judge can only make a
recommendation rather than a ruling, Fed. R. Civ. P. 72(b). Rule
72 mirrors the standard-of-review taxonomy described in section
636(b)(1). It provides that a magistrate's order on a
nondispositive motion shall be modified or set aside by the
district court only if "found to be clearly erroneous or contrary
to law." Fed. R. Civ. P. 72(a). Conversely, if a party contests
a magistrate's proposed findings and recommendations on a
dispositive motion, the district judge must "make a de novo
determination." Fed. R. Civ. P. 72(b).
 We think that the terms dispositive and nondispositive as
used in Rule 72 must be construed in harmony with the
classifications limned in section 636(b)(1). See generally In re
San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956, 962 (1st
Cir. 1993) (construing Fed. R. Civ. P. 54(d) in light of 28 U.S.C.
 1920); cf. Marlowe v. Bottarelli, 938 F.2d 807, 813 (7th Cir.
1991) (acknowledging the rule that, whenever possible, courts
should construe statutes and implementing regulations in pari
materia). This does not mean, of course, that dispositive motions
are those excepted motions specifically enumerated in section
636(b)(1)(A), and no others. Rather, that enumeration informs the
classification of other motions as dispositive or nondispositive. 
Motions for sanctions premised on alleged discovery violations are
not specifically excepted under 28 U.S.C. 636(b)(1)(A) and, in
general, they are not of the same genre as the enumerated motions. 
We hold, therefore, that such motions ordinarily should be
classified as nondispositive. See Maisonville v. F2 Am., Inc., 902
F.2d 746, 747-48 (9th Cir. 1990); Thomas E. Hoar, Inc. v. Sara Lee
Corp., 900 F.2d 522, 525 (2d Cir. 1990); see also 14 James Wm.
Moore, et al., Moore's Federal Practice 72.02(7)(b) (3d ed.
1999). Withal, we caution that a departure from this general rule
may be necessary in those instances in which a magistrate judge
aspires to impose a sanction that fully disposes of a claim or
defense. See, e.g., Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d
1458, 1462 (10th Cir. 1988) (striking of plaintiffs' pleadings as
discovery sanction reviewed de novo); North Am. Watch Corp. v.
Princess Ermine Jewels, 786 F.2d 1447, 1450 (9th Cir. 1986)
(dismissal of counterclaim as a discovery sanction reviewed de
novo).
 This case falls within the general rule, not within the
rare exception to it. Magistrate Judge Muirhead whatever he
might theoretically have done in fact imposed only a monetary
sanction. His order, therefore, was nondispositive and the
"clearly erroneous" standard obtains. See 28 U.S.C. 
636(b)(1)(A); Fed. R. Civ. P. 72(a). Indeed, Paulshock himself
apparently recognized as much at an earlier stage of the
litigation: when he filed his objection to the magistrate's order
in the district court, he denominated it as one filed "pursuant to
Fed. R. Civ. P. 72(a)."
 The second facet of Paulshock's argument also lacks
force. He calumnizes the district court for concentrating its
efforts on the testimony of three witnesses and short-shrifting the
balance of the compendious record. We reject this initiative. 
For one thing, the bulk of the five-day hearing dealt with matters
other than the Jackson evaluation; none of those matters resulted
in the imposition of sanctions against Paulshock and none of them
formed any part of Paulshock's assignment of error to the district
court. Thus, the district court had every right to eschew detailed
consideration of them. For another thing, regardless of which
evidence the district court deemed most worthy of attention, the
acid test is whether, upon our review of the entire record, the
findings manifest clear error. See Smith v. F.W. Morse & Co., 76
F.3d 413, 420 (1st Cir. 1996); Cumpiano, 902 F.2d at 152. Here,
they do not.
 We need go no further. Concluding, as we do, that the
magistrate's findings were not clearly erroneous and that the
district court properly performed its review function, we reject
Paulshock's appeal.

Affirmed.