09-1296-cv
Keach v. County of Schenectady

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

_____

August Term, 2009

(Argued: January 14, 2010                    Decided: January 28, 2010)

Docket No. 09-1296-cv

_____

ELMER ROBERT KEACH, III,

*Intervenor-Appellant,*

NICHOLE MARIE MCDANIEL, LESSIE LEE DAVIES,

*Plaintiffs*,

— v.—

COUNTY OF SCHENECTADY, HARRY BUFFARDI, GORDON POLLARD, ROBERT ELWELL SR.,[*]

*Defendants-Appellees*.

_____

Before:

CABRANES, POOLER, AND LYNCH, *Circuit Judges*.

_____

Appeal by an attorney from a decision of the United States District Court for the

_____

[*] The Clerk of the Court is directed to amend the official caption in this case to conform to the listing of the parties above.

Northern District of New York (Gary L. Sharpe, <u>Judge</u>), denying a motion for recusal and declining to impose sanctions on that attorney. Because the district court merely engaged in routine judicial commentary and criticism of the attorney, while declining to impose sanctions and making no findings of professional misconduct, we lack jurisdiction over this appeal.

DISMISSED.

—————————

JOHN R. SUPPLE, Hinshaw & Culbertson LLP, New York, New York, *for Appellant.*

JONATHAN M. BERNSTEIN (William J. Greagan, *on the brief*), Goldberg Segalla, LLP, Albany, New York, *for Appellees, on submission.*

—————————

GERARD E. LYNCH, *Circuit Judge*:

Elmer Robert Keach, III, Interevenor-Appellant, appeals from a decision of the United States District Court for the Northern District of New York (Gary L. Sharpe, <u>Judge</u>) denying a motion for recusal and declining to impose sanctions on Keach. Keach argues that Judge Sharpe should have recused himself from further proceedings on his *sua sponte* order to show cause as to why Keach should not be sanctioned, and in any event erred in making several erroneous "findings" that Keach engaged in professional misconduct. We conclude that because the district court's decision was limited to routine judicial commentary and criticism, without any specific findings of professional

2

misconduct, we lack jurisdiction over this appeal. Because we cannot review, at Keach's behest, the judgment denying sanctions against him, neither can we review preliminary procedural rulings (such as the denial of the recusal motion) in the proceedings leading to that judgment.

**BACKGROUND**

**I.    The Underlying Conduct**

Keach was lead counsel in a class action lawsuit, eventually settled for $2.5 million, against the County of Schenectady and a number of its officials. Following the settlement, the district court awarded an attorney's fee that was significantly less than Keach had requested.[1] Keach's appeal of the fee decision set off a series of events that led the district court to consider whether Keach should be sanctioned for his behavior, and, ultimately, to this appeal.

During the settlement negotiations, the defendants' attorney had requested that the implementation of the settlement be delayed until after the re-election campaign of the county sheriff, a defendant, was over. Not surprisingly, this request, while copied to opposing counsel, was meant to be kept secret, and the letters discussing this proposition were titled "CONFIDENTIAL FOR SETTLEMENT PURPOSES ONLY" and "FOR SETTLEMENT PURPOSES ONLY - NOT TO BE FILED ON THE DOCKET." The

---

[1] Keach had requested a fee of $650,000, but was ultimately awarded a fee of $344,795.

3

letters regarding the proposed delay of the settlement were therefore treated as sealed, under the apparent rationale that they were part of settlement negotiations and should remain confidential.[2]  Keach declined the defendants' proposal to postpone the settlement implementation, and the settlement was announced prior to the sheriff's election. Following approval of the settlement, the district court granted a smaller attorney's fee than Keach had requested, a decision that Keach has appealed separately.  According to Keach, as retaliation for his refusal to postpone the settlement, defendants' counsel has opposed his fee appeal.

After filing his notice of appeal, Keach wrote to the district court asking that the documents relating to the request to postpone the settlement negotiation be unsealed.  The letter revealed the content of the sealed letters, describing them as addressing "settlement negotiations and the request of the Defendants to delay the settlement of this class action until after the November 2006 Schenectady County Sheriff's election."  The stated reason for the request to unseal the correspondence was that "Class Counsel plans to include these documents in their Joint Appendix regarding the pending appeal on attorneys' fees. Class Counsel does not believe there is any present basis to have these items filed with the Court under seal, nor should they have to be filed under seal with the Second Circuit,"

---

[2]  While the letters were considered sealed by the parties, the district court did not enter an explicit sealing order and made no findings reflecting an independent judgment that they should be sealed.  We express no view as to the propriety of the de facto sealing of the letters.

4

given that the settlement had been approved and a judgment entered. The district court denied the request, reasoning that "[t]he [Second] Circuit has full access to the District Court's sealed documents."

The request and its denial, both published on the district court's docket sheet, had the effect of publicly disclosing the contents of the previously-sealed letters. The same day the district court denied Keach's request, Keach gave the district court's order, and his underlying letter-request, to *The Albany Times Union* newspaper, which reported that the sealed documents contained defendants' request to postpone the settlement until after the election. Keach was quoted in the paper as saying that "[t]here is [] certainly a story to be told here . . . and I am going to make sure that those documents reach the light of day." Soon after, the defendants' attorney, William Greagan, filed an affidavit asking the court to bar Keach from practicing law in the Northern District of New York for, *inter alia,* "willfully disregard[ing] Court Orders regarding confidential matters thus impairing the power of the Court, the rights of the litigants, and the confidence of the litigants in the judicial process." Accompanying this affidavit was a letter from Greagan to the district court stating that he had submitted the affidavit as a result of a discussion that occurred when he "contacted [Judge Sharpe's Chambers] for guidance regarding Mr. Keach's disclosure of privileged information."

Upon receiving Greagan's letter, Keach telephoned the judge's deputy clerk, John Law, to inquire about the "guidance" Greagan had received. Law apparently informed

5

Keach that the only "guidance" Greagan received was that he should address any concerns to the court in writing. What Keach said to Law is disputed. But, Law was apparently left with the impression that Keach had accused the court of improper *ex parte* communication with Greagan. Following this conversation, Keach again wrote to the district court asking that it publish Greagan's letter and affidavit (which Greagan had requested be filed under seal), require Greagan to make a formal motion for disbarment, and order that any further communication between Greagan and the court be conducted in writing and filed on the public docket. Following the last request, Kreach added a footnote stating that:

> I want to make clear that, by making this request, I am not implying that either the Court, or its staff, engaged in any impermissible *ex parte* communication with Mr. Greagan about the substance of his application to have me disbarred. . . . I also want to make clear that I do not believe that the Court provided Mr. Greagan with "guidance" to file his application under seal.

## II.    The In-Court Conference

Following receipt of this correspondence, Judge Sharpe scheduled an in-court conference. Judge Sharpe began the conference by remarking that Greagan's application to the court to have Keach disbarred was improper, because under the local rules of the Northern District of New York such an application would have to be filed with the Chief Judge of the court. Judge Sharpe then moved on to discuss whether sanctions should be imposed on Keach.

After Keach admitted that he had given the district court's order declining his request to unseal the documents to the newspaper, Judge Sharpe questioned whether Keach had "lied to [the court]" or "engaged in subterfuge" by writing that he wanted to have the documents unsealed to aid in his Second Circuit appeal, when his real motivation was to be able to release them to the news media: "In my view that letter is disingenuous with the Court. You had your own ulterior motives for doing it. It had nothing to do with the legal authority of the Second Circuit to review sealed documents before the District Court and I believe it may be [grounds for] a disciplinary proceeding . . . ."

Judge Sharpe then discussed Keach's phone conversation with Law. Judge Sharpe noted that an internal chambers record of communications with parties and litigants contained an entry stating that Keach had "made a bald accusation to my courtroom deputy that I had engaged in . . . illegal ex parte communications with Mr. Greagan." Judge Sharpe noted that this was followed by Keach's letter containing the footnote stressing that he was *not* accusing the court of any improper *ex parte* contact: "In my view that is a specific, hang up the phone, oh, my [G]od, what did I just say to the Court. Let me do what I have a history of doing, denying that I meant what I said and I'll document it in a letter so that later on I've got plausible deniability over the fact that I just accused the Court of illegal ex parte communications."

Following this, Judge Sharpe recited a string of previous incidents in which Keach

7

had been criticized or warned by other Northern District of New York judges in a variety of matters. The court concluded that "[y]ou have been dancing on a thin wire for a long time in this district, Mr. Keach. And you ought to be mindful . . . that these kinds of proceedings have a dramatic impact on your ability to earn a living in a variety of courts in a variety of jurisdictions. I appreciate that. I'm not sure that you appreciate it."

The court then asked for submissions from Greagan regarding his motion for sanctions, and *sua sponte* ordered Keach to show cause why he should not be sanctioned for misleading the court about his reasons for applying to unseal the documents, and for alleging that the court had engaged in improper *ex parte* contact.

In his opposition to the court's Order to Show Cause, Keach denied any wrongdoing in connection with the unsealing letter, and denied that he had accused the court of improper *ex parte* contact, while admitting that he had called the district court's chambers regarding its communication with Greagan. Keach also moved for Judge Sharpe to recuse himself.

### III. The District Court's Decision

The district court denied both the motion to recuse and the motion for sanctions. With regard to the motion for recusal, the court found no bias or prejudice on its part. With regard to sanctions, the court first found that Keach's disclosure of the settlement correspondence did not justify sanctions, because it was not clear whether disclosure of the documents violated a court order.

8

The court found the content of Keach's request to unseal the correspondence and the alleged accusation of improper *ex parte* communication "more troubling." The court stated that "[c]ollectively, they cause the court to question [Keach's] candor and honesty. Rather than simply apologize for having been less than fully forthcoming in his unsealing letter, his post-conference affidavit again reverts to his 'perfecting an appeal' justification to explain his conduct in the first place."[3]

The court noted that Keach admitted that the desire to publicize the defendants' effort to postpone the settlement until after the election was one of the reasons for asking that the correspondence be unsealed, and stated that the "genuineness of [Keach's] position" was undercut by the fact that the Second Circuit had access to sealed documents. The court held that whether or not a Circuit court case manager had suggested Keach apply to unseal the documents was irrelevant. "What is relevant is seeking judicial relief without complete candor as to why the relief is being sought in the first place." The court added that an officer of the court has a duty of candor to the court, but never explicitly stated that Keach violated that duty, or made a finding that Keach had violated any rule that would subject him to disciplinary sanctions.

With respect to the alleged accusation of *ex parte* communication, the court

---

[3] The court also recalled that at the in-court conference it had told Keach that his unsealing letter was "disingenuous fueled by his own ulterior motives."

9

implied that it doubted Keach's version, noting that chambers personnel documented communications with attorneys, and that the footnote in Keach's letter suggested that Keach was concerned that Law might have construed him as having accused the court of an improper *ex parte* communication. Nevertheless, the court did not make a finding of fact about what had occurred and expressly declined to "hold a hearing to get at the so-called 'truth'" about the conversation.

The court summed up by saying that sanctions are appropriate "when an attorney's representations subjectively reflect bad faith, or, worse yet, when a statement is uttered as a baseless allegation of judicial misconduct." But the court noted that judges "tend to err on the side of caution" when an attorney's livelihood is at stake, declined to impose sanctions on Keach, and denied Greagan's motion for sanctions.

**DISCUSSION**

Despite the district court's decision not to sanction Keach, Keach appeals, challenging both the district court's denial of the recusal motion, and its alleged "findings" of misconduct. Keach' allegations of erroneous "findings" include principally: (1) that Keach made his application to unseal disingenuously in violation of his duty of candor to the court; and (2) that Keach accused the court of improper *ex parte* contact with Greagan.

However, before we confront whether the district court erred in failing to recuse itself or in finding misconduct, we must first assess whether we have jurisdiction to

10

review the district court's decision. We conclude that because the district court's opinion was in the vein of routine judicial commentary, and made no findings of professional misconduct, we lack jurisdiction to review it.

**I.    Jurisdiction**

While, typically, nonparties may not appeal from the judgments of a district court, Marino v. Ortiz, 484 U.S. 301, 304 (1988), there is an exception to this general rule where a nonparty, such as an attorney, has been held in contempt or sanctioned by the court. Nisus Corp. v. Perma-Chink Sys., Inc., 497 F.3d 1316, 1319-20 (Fed. Cir. 2007); see U.S. Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988); MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 138 F.3d 33, 37 (2d Cir. 1998). Therefore, if Keach had been sanctioned, he would be permitted to appeal. See MacDraw, 138 F.3d at 37.

However, the district court *denied* the motion to sanction Keach, and "[o]rdinarily, a party cannot appeal a judgment in his favor to obtain review of findings he deems erroneous." K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health of the State of New York, 189 F.3d 273, 282 n.11 (2d Cir. 1999); see also Trust for Certificate Holders of Merrill Lynch Mortgage Investors v. Love Funding Corp., 496 F.3d 171, 173 (2d Cir. 2007) ("[O]rdinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right [under 28 U.S.C. § 1291] to appeal therefrom."), quoting Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333 (1980); In re O'Brien, 184

F.3d 140, 141 (2d Cir. 1999) ("It is a fundamental principle of jurisprudence that '[a] party may not appeal from a judgment or decree in his favor, for the purpose of obtaining review of findings he deems erroneous which are not necessary to support the decree.'"), quoting Elec. Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 242 (1939) (alteration in original). Despite this general rule, it is possible that a district court could decline to impose tangible sanctions, and yet still make a finding of misconduct that would constitute a ruling adverse to the attorney and would therefore be appealable.

We have held that a district court's referral of specific findings of misconduct to a disciplinary committee, even absent a monetary sanction, is appealable. See In re Goldstein, 430 F.3d 106, 111-12 (2d Cir. 2005). The district court judgment in Goldstein, referring the relevant attorney's conduct to a disciplinary committee, included an attached Magistrate Judge's Report and Recommendation that "explicitly concluded that Goldstein was in violation of various disciplinary rules, in other cases as well as this one, and stated that [Goldstein] 'was unprepared to conduct himself as an officer of the court.'" Id. at 112; cf. Teaford v. Ford Motor Co., 338 F.3d 1179, 1181 (10th Cir. 2003) (holding non-appealable a district court decision referring hearing transcript to a state bar association without making any specific findings of misconduct or expressing any opinion on the attorney's actions). These specific findings of fact showed that the district court's referral was "much more than implied criticism," and was, in fact, a sanction, which is reviewable. Goldstein, 430 F.3d at 112. In Goldstein, then, we held that a district court's

12

referral of an attorney's conduct to a disciplinary committee that included specific findings of judicial misconduct constituted an appealable sanction.

Our sister Circuits have adopted a variety of standards for when a district court's findings of judicial misconduct are appealable. The Seventh Circuit does not permit any appeals absent a financial imposition. See, e.g., Clark Equip. Co. v. Lift Parts Mfg. Co., 972 F.2d 817, 820 (7th Cir. 1992) ("[A]n attorney may not appeal from an order that finds misconduct but does not result in monetary liability . . . ."). The First Circuit is slightly more flexible, permitting appeals from formal reprimands without monetary sanctions. See In re Williams, 156 F.3d 86, 92 (1st Cir. 1998) ("Sanctions are not limited to monetary imposts. Words alone may suffice [to permit an appeal of a sanctions order] if they are expressly identified as a reprimand."). The Third and Federal Circuits have taken approaches similar to that of the First Circuit. See Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 542-44 (3d Cir. 2007) (concluding that district court order granting motion for sanctions and finding attorneys violated specific rule, but not imposing a monetary or other disciplinary penalty, was appealable); Precision Specialty Metals, Inc. v. United States, 315 F.3d 1346, 1352-53 (Fed. Cir. 2003) (finding a formal judicial reprimand, without monetary sanctions, sufficient to permit an attorney's appeal).

The Fifth, Tenth, and District of Columbia Circuits have taken an even broader view of appealability, allowing appeals where there has been some specific finding of judicial misconduct, even absent an official reprimand. See Butler v. Biocore Med.

13

Techs., Inc., 348 F.3d 1163, 1167-69 (10th Cir. 2003) (holding that an order finding that an attorney committed an ethical violation but not imposing any other sanction is appealable); Walker v. City of Mesquite, 129 F.3d 831, 832-33 (5th Cir. 1997) (holding that a district court's finding that an attorney was guilty of "blatant misconduct" was sufficient to permit an appeal); Sullivan v. Comm. on Admissions & Grievances, 395 F.2d 954, 956 (D.C. Cir. 1968) (holding that a district court's finding that an attorney was guilty of misconduct that "plainly reflect[ed] adversely on his professional reputation" was sufficient to permit attorney's appeal).

Finally, the Ninth Circuit has nominally adopted the First Circuit's approach, Weissman v. Quail Lodge, Inc., 179 F.3d 1194, 1200 (9th Cir. 1999) ("We agree with the [First Circuit's] holding of Williams that words alone will constitute a sanction only if they are expressly identified as a reprimand." (internal quotation marks omitted)), but has also found that a district court's factual finding and legal conclusion that an attorney intentionally violated a specific ethics rule is *per se* a sanction warranting an appeal, United States v. Talao, 222 F.3d 1133, 1137-38 (9th Cir. 2000); see also United States v. Ensign, 491 F.3d 1109, 1118 (9th Cir. 2007).

Keach "urge[s] this Court to adopt the reasoning of the [Fifth, Tenth, and D.C. Circuits] and allow an attorney to appeal a district court decision that expressly or effectively finds that the attorney engaged in substantive misconduct," and then to "rule that the circumstances of Keach's appeal meet this test." On the legal point, we need

14

little urging. As exemplified in Goldstein, we have already found jurisdiction in a case in which there was no monetary sanction, where a district court endorsed a Magistrate Judge's formal findings of misconduct and referred the matter to the state disciplinary authorities for action. Goldstein, 430 F.3d at 111-12. That ruling makes sense: a finding that an attorney is guilty of specific misconduct is an adverse decision that can be appealed, even if the court decides that no additional punishment needs to be levied. However, even under this standard, the district court's statements here do not rise to the level of a "finding of misconduct," and cannot support jurisdiction over this appeal. Although the district court *questioned* Keach's candor and found his actions "troubling," it expressly declined to make a finding that Keach had lied, and it never reached any conclusion or made any finding that Keach violated a standard of professional practice.

In contrast to a specific finding of professional misconduct, the district court's comments were in the nature of the kind of "routine judicial commentary" or criticism that does not permit an appeal under any Circuit's standard. See Williams, 156 F.3d at 91 ("This argument invites us to draw a line between routine judicial commentary on a lawyer's performance (presumably non-appealable) and commentary that is inordinately injurious to the lawyer's reputation (presumably appealable)."); Talao, 222 F.3d at 1138 (finding district court's order appealable where it "did more than use 'words alone' or render 'routine judicial commentary'"). As the Federal Circuit has explained, "[t]o allow appeals by attorneys . . . merely because a court criticized them or characterized their

15

conduct in an unfavorable way would invite an appeal by any nonparty who feels aggrieved by some critical statement made by the court in an opinion or from the bench." Nisus, 497 F.3d at 1320

Unlike the cases in which we and other Circuits have permitted appeals, the district court here did not make findings of violations of specific professional standards, refer the matter to disciplinary authorities, issue a reprimand, or declare that Keach was guilty of misconduct. Indeed, while the judge's language suggested that he did not accept Keach's version of events, the court – far from making a finding of misconduct – declined even to hold a hearing to establish the actual facts. Instead, the court limited itself to warning Keach that it was not in his or any attorney's interest to conduct himself in a way that would lead a judge to question his integrity. An appellate court can reverse an order imposing a sanction or making a finding that an attorney has violated a rule of professional conduct; it has no power to reverse a judge's poor opinion of the skill or trustworthiness of a lawyer who has appeared before him or her.

No circuit has allowed an attorney to appeal the denial of a sanctions order absent a specific finding of judicial misconduct. See Butler, 348 F.3d at 1168 ("We . . . wish to make clear that only orders finding misconduct are appealable and not every negative comment or observation from a judge's pen about an attorney's conduct or performance . . . ." (internal quotation marks omitted)); United States v. Gonzales, 344 F.3d 1036, 1039-40 (10th Cir. 2003) (holding that because the district court's order did not make any new

16

finding of misconduct there was "nothing from which to appeal"); <u>Talao</u>, 222 F.3d at 1138 (noting that "a formal finding of a violation eliminates the need for difficult line drawing in much the same way as a court's explicit pronouncement that its words are intended as a sanction").

While the various Circuits may utilize different formulations in describing what may be appealed, our position is consistent with the overwhelming weight of authority: an attorney may appeal a decision where the district court imposes a tangible sanction or makes an express finding that a lawyer has committed specific acts of professional misconduct, but not where the court has engaged in such routine judicial commentary or criticism as the district court expressed here.

Because the district court's decision declining to impose sanctions was limited to such criticism and made no explicit finding that Keach engaged in professional misconduct, we lack jurisdiction to review, at Keach's behest, the order denying sanctions. For the same reason, we lack jurisdiction to review any of the procedural rulings (such as the judge's denial of the recusal motion) that led up to it.

**CONCLUSION**

For the foregoing reasons, this appeal is DISMISSED.

17