# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-11490

United States Court of Appeals
Fifth Circuit

**FILED**
January 14, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

IGNACIO ARELLANO-BANUELOS,

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before ELROD, HIGGINSON, and ENGELHARDT, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Ignacio Arellano-Banuelos appeals his conviction by a jury for illegal reentry. He argues that the district court erred by denying his motion to suppress his confession, preventing him from presenting a statute of limitations defense, striking a prospective juror for cause, and admitting into evidence a certificate of non-existence of record. We remand for the district court to make additional findings as to whether Arellano-Banuelos was "in custody" within the meaning of *Miranda v. Arizona*, 384 U.S. 436 (1966). We do not reach the other issues at this time.

No. 17-11490

I.

Arellano-Banuelos was born in Mexico in 1981 and entered the United States as a child. In 2001, he pleaded guilty to aggravated robbery and was sentenced to 10 years imprisonment. He was deported to Mexico in 2009, but later reentered the United States. On May 7, 2015, he was arrested by Texas law enforcement officers on an outstanding warrant. United States Immigration and Customs Enforcement (ICE) was notified of Arellano-Banuelos's arrest, and placed a detainer on him the next day.

In July 2015, Arellano-Banuelos pleaded guilty in state court to improper photography or visual recording and to attempted evading arrest. He was sentenced to 15 months imprisonment on each count. In August 2015, Arellano-Banuelos was interviewed in state prison by Norberto Cruz, an agent with ICE's Criminal Alien Program. The interview took place in an office within the prison, and Arellano-Banuelos was brought in by a prison guard. The prison guard remained present during the interview. According to Agent Cruz, he told Arellano-Banuelos that he had the right to refuse to answer questions. But it is undisputed that Agent Cruz did not provide Arellano-Banuelos complete *Miranda* warnings.

At the time of the interview, Agent Cruz was aware that Arellano-Banuelos had been previously removed from the United States and that he was subject to an ICE detainer. Agent Cruz asked Arellano-Banuelos a series of questions, including his country of citizenship, place of birth, whether he had ever been ordered deported, when he last entered the United States, and whether he ever applied to the Attorney General for permission to reenter the United States after he was deported. Agent Cruz recorded Arellano-Banuelos's answers to these questions on an affidavit form, and Arellano-Banuelos signed the affidavit.

2

No. 17-11490

Agent Cruz's supervisor later referred Arellano-Banuelos for criminal prosecution for illegal reentry. On May 4, 2016, Arellano-Banuelos was released from state prison into ICE custody. On May 25, 2016, he was indicted for illegal reentry.[1] Before trial, Arellano-Banuelos moved to suppress his August 2015 admissions to Agent Cruz, arguing that these statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The district court denied the motion after an evidentiary hearing, holding that the August 2015 interview "was not a custodial interrogation for *Miranda* purposes."

Arellano-Banuelos also filed a motion to dismiss the indictment on statute of limitations grounds, arguing that federal immigration authorities had reason to know of his presence in the United States more than five years before he was indicted. The district court denied the motion. Arellano-Banuelos later sought to introduce his income tax returns and his son's birth certificate into evidence to support a statute of limitations defense. The district court ruled that this evidence was inadmissible because it was legally irrelevant. The court later refused Arellano-Banuelos's request for a jury instruction on the statute of limitations, reasoning that there was no evidence in the record that ICE was aware of his presence in the United States more than five years before his indictment.

At trial, the government called Agent Cruz to testify about his interview with Arellano-Banuelos and introduced a copy of the August 2015 affidavit into evidence. The government argued to the jury that this affidavit demonstrated that Arellano-Banuelos admitted every element of the offense of illegal reentry. The government also introduced into evidence a certificate of non-existence of record (CNR) certifying that there was no record that Arellano-Banuelos received permission to reenter the United States after his prior removal.

---

[1]     The grand jury returned a superseding indictment on April 4, 2017.

No. 17-11490

Priscilla Dobbins, an officer with United States Citizenship and Immigration Services (USCIS), testified that she signed the CNR and attested to the fact that a record search was conducted to attempt to locate an application for permission to reenter. Arellano-Banuelos did not object to the admission of the CNR or to Dobbins's testimony. After hearing this and other evidence, the jury found Arellano-Banuelos guilty of illegal reentry. He was sentenced to 66 months imprisonment.

## II.

Arellano-Banuelos challenges the district court's denial of his motion to suppress his August 2015 affidavit and admissions to Agent Cruz. The Supreme Court held in *Miranda v. Arizona* that "the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination require[s] that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 481–82 (1981). *Miranda* warnings are required only if an individual is both "in custody" and "subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

Arellano-Banuelos moved to suppress his admissions on the grounds that he was questioned while in custody without the benefit of *Miranda* warnings. After an evidentiary hearing, the district found that Arellano-Banuelos was not subjected to a custodial interrogation and denied the motion.[2] When considering the denial of a motion to suppress, "this Court

---

[2] Over a month after oral argument, the government submitted a letter to the court arguing for the first time that any *Miranda* error was "invited error" because Arellano-Banuelos introduced a copy of the affidavit into evidence. Arellano-Banuelos, referring to other portions of the record and citing caselaw, contends that he did not waive his challenge to the suppression ruling. The government previously described the *Miranda* issue in initial briefing as a "preserved issue with de novo review." Even had the government not explicitly asserted that the *Miranda* issue was preserved, "we generally do *not* consider contentions raised for the first time at oral argument." *Martinez v. Mukasey*, 519 F.3d 532, 545 (5th Cir.

No. 17-11490

reviews factual findings for clear error and the ultimate constitutionality of law enforcement action de novo." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014).

## A.

We first consider whether Agent Cruz's August 2015 interview with Arellano-Banuelos was an interrogation for purposes of *Miranda*. The government argued before the district court that Cruz's questioning was not an interrogation because it was intended only to verify information for an administrative deportation, not to elicit incriminating statements. In response, Arellano-Banuelos asserted that an investigating officer's subjective intent is not determinative and that *Miranda* warnings are required whenever the officer is aware that the information sought is potentially incriminating.

In its oral denial of the motion to suppress, the district court concluded that *Miranda* warnings were not required because Agent "Cruz's subjective motivation was purely administrative" and "generally the purpose of the screening interview is administrative." The district court also found that "[w]hether or not there is any decision made to prosecute criminally is not made by the people in the screening function" and "at the time of the interview there was no investigation into the defendant's criminality."

---

2008). We are even more reluctant to consider arguments raised after oral argument is complete and the case has been submitted for decision. The proper time to closely examine the record and develop legal defenses is *before* the completion of briefing, not in the months after oral argument. The issue presented in the government's letter is based on the trial record and could easily have been addressed in the initial briefing. *See United States v. Guillen-Cruz*, 853 F.3d 768, 777 (5th Cir. 2017) (declining to consider an argument not raised in the appellee brief when "the facts supporting the Government's argument . . . were readily available prior to briefing"). The government acknowledges that this issue was not raised in briefing or at argument, but points to no "exceptional circumstances," *Silber v. United States*, 370 U.S. 717, 718 (1962), or "substantial public interests," *Guillen-Cruz*, 853 F.3d at 777, warranting consideration of its late-raised argument. We therefore decline to consider the government's new theory.

No. 17-11490

As the Supreme Court has explained, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police *should know* are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301 (emphasis added); *see also Gladden v. Roach*, 864 F.2d 1196, 1198 (5th Cir. 1989) ("Interrogation is defined as words or actions that the police should know are reasonably likely to elicit an incriminating response from the suspect."). This inquiry is "focuse[d] primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301. Although an officer's subjective intent may be relevant to what an officer *should* know, proof of subjective intent is not required to establish that an interrogation occurred. *Id.* at 301, 301 n.7.

That the initial purpose of an investigation is civil rather than criminal does not render *Miranda* inapplicable. In *Mathis v. United States*, 391 U.S. 1 (1968), the Supreme Court held that *Miranda* warnings were required when a government revenue agent questioned an inmate as part of a tax investigation. The Court acknowledged that "a 'routine tax investigation' may be initiated for the purpose of a civil action rather than criminal prosecution." *Id.* at 4. But it "reject[ed] the contention that tax investigations are immune from" *Miranda*, noting that "tax investigations frequently lead to criminal prosecutions, just as the one here did." *Id.* The Court observed that "the investigating revenue agent was compelled to admit" that "there was always the possibility during his investigation that his work would end up in a criminal prosecution." *Id.*

In this case, Agent Cruz's own testimony makes clear that he should have known that his questioning of Arellano-Banuelos was likely to elicit incriminating responses. Agent Cruz testified that he reviewed Arellano-Banuelos's file before the interview, and he was aware of Arellano-Banuelos's

prior removal from the United States. He also testified that, as part of his work as an ICE deportation officer, he was aware of the offense of illegal reentry. Like the investigating revenue officer in *Mathis*, Agent Cruz acknowledged that he was aware that someone he interviewed could later be referred for prosecution. *Id.*

Notably, Agent Cruz began the August 2015 interview by telling Arellano-Banuelos that he already had his file and had "identified him as somebody that had been removed before." Cruz's questioning then elicited a confession to every element of the crime of illegal reentry. Specifically, Arellano-Banuelos admitted that (1) he was an alien; (2) he was previously deported; (3) he never applied to the Attorney General for permission to reenter the United States after being deported; and (4) he reentered the United States. *See* 8 U.S.C. § 1326(a); *United States v. Martinez-Rios*, 595 F.3d 581, 583 (5th Cir. 2010). At trial, the government relied on the August 2015 affidavit, among other evidence, to argue to the jury that Arellano-Banuelos had admitted his guilt to every element of the offense.

As with tax inquiries, immigration investigations into previously removed aliens "frequently lead to criminal prosecutions, just as the one here did." *Mathis*, 391 U.S. at 4. Agent Cruz was aware of the possibility that Arellano-Banuelos could be referred for prosecution, and he should have known that his questions were highly likely to elicit incriminating responses. Under these circumstances, it is immaterial that Cruz's supervisor—rather than Cruz himself—made the decision to refer Arellano-Banuelos for prosecution. Nor is it determinative that no criminal investigation was underway at the time of the interview. *See id.* (noting that the criminal investigation began eight days after the last interview).

The government offers no persuasive basis to distinguish *Mathis* from the facts of this case. It relies primarily on *United States v. Rodriguez*, 356 F.3d

254, 258–60 (2d Cir. 2004), and *United States v. Salgado*, 292 F.3d 1169 (9th Cir. 2002), to argue that immigration screening interviews do not constitute interrogation. But these cases involved interviews with immigration officers that took place *before* the defendant illegally reentered the United States. The Second and Ninth Circuits therefore concluded that immigration officials had no reason to believe that the information they were gathering would incriminate the defendants in a later prosecution for illegal reentry. *See Rodriguez*, 356 F.3d at 260 (distinguishing *Mathis* because there was "no basis in the record to conclude that Agent Smith knew or should have known that the results of his interview would be used to support criminal charges resulting from conduct of Rodriguez—conduct that would not take place until three years thereafter"); *Salgado*, 292 F.3d at 1172–73 (explaining that the immigration officer "had no reason to believe" that Salgado would later reenter the United States illegally and be subject to prosecution for illegal reentry). Here, by contrast, Agent Cruz was aware at the time of the interview that Arellano-Banuelos had a prior removal and could be prosecuted for illegal reentry.

Although we have recognized a "routine booking exception" to *Miranda*, *United States v. Virgen-Moreno*, 265 F.3d 276, 293 (5th Cir. 2001), the exception does not apply here. *Miranda* warnings are not required when an officer asks only "routine booking question[s] . . . to secure the biographical data necessary to complete booking or pretrial services." *Pennsylvania v. Munoz*, 496 U.S. 582, 601 (1990) (plurality opinion) (internal quotation omitted). "The permissible booking questions include data such as a suspect's name, address, height, weight, eye color, date of birth, and current age." *Presley v. City of Benbrook*, 4 F.3d 405, 408 (5th Cir. 1993); *see also Virgen-Moreno*, 265 F.3d at 293. "[Q]uestions designed to elicit incriminatory admissions are not covered under the routine booking question exception." *Virgen-Moreno*, 265 F.3d at 293–94.

No. 17-11490

Arellano-Banuelos was booked into state prison several months before his interview with Agent Cruz, and the government has not argued that the August 2015 ICE interview was a "booking" interview. Even if we were to assume that the interview resembled a booking, Agent Cruz's questions to Arellano-Banuelos exceeded the scope of the routine booking exception. Cruz's questioning went beyond basic biographical information to include inquiries into whether Arellano-Banuelos had been previously deported and whether he had received permission from the Attorney General to reenter the United States. We are aware of no authority suggesting that such questions can be considered routine booking questions.

In light of Agent Cruz's knowledge of Arellano-Banuelos's prior removal from the United States and the incriminating nature of his questions, we hold that the August 2015 interview was an interrogation under *Miranda*.

B.

Even in the context of an interrogation, *Miranda* warnings are not required unless an individual is "in custody for the purposes of *Miranda*." *United States v. Wright*, 777 F.3d 769, 777 (5th Cir. 2015). Custody is a term of art, and prison inmates are not automatically considered "in custody" within the meaning of *Miranda* caselaw. *See Maryland v. Shatzer*, 559 U.S. 98, 114 (2010). "When a prisoner is questioned, the determination of custody should focus on all of the features of the interrogation" to determine whether the circumstances of the interview "are consistent with an interrogation environment in which a reasonable person would have felt free to terminate the interview and leave." *Howes v. Fields*, 565 U.S. 499, 514–15 (2012) (internal quotation omitted). In the prison context, a prisoner is considered free to leave if he is free to "return[] to his normal life" within the prison. *Shatzer*, 559 U.S. at 114.

9

Custody determinations under *Miranda* present "a mixed question of law and fact." *Thompson v. Keohane*, 516 U.S. 99, 102 (1995). "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Fields*, 565 U.S. at 509 (citations omitted). The interview in this case took place in an office within the prison. Agent Cruz and another ICE agent conducted interviews in the same room simultaneously. Arellano-Banuelos was not in handcuffs, although a prison guard was present during the interview. The length of the interview is not apparent from the record. Agent Cruz testified that he told Arellano-Banuelos that he had the right to refuse to answer questions. But we perceive no evidence in the record as to whether Arellano-Banuelos was told that he was free to leave the interview.

In summarizing its reasons for denying the motion to suppress, the district court stated that, "although certainly as a factual matter the defendant was in custody, meaning he couldn't get up and walk out, he was not required to cooperate or to speak with Agent Cruz, and therefore I find that this was not a custodial interrogation for *Miranda* purposes." The district court made no further findings on the custody issue. From this record, it is unclear whether the district court made a custody determination; and if so, whether the district court's custody determination was based on an analysis of all the circumstances of the interrogation or solely on Arellano-Banuelos's status as a prisoner.

Because the district court's factual findings provide an inadequate basis for appellate review, we remand for the district court to enter a supplemental

No. 17-11490

order on the custody issue.[3] *United States v. Cole*, 444 F.3d 688, 690 (5th Cir. 2006); *United States v. Runyan*, 275 F.3d 449, 468 (5th Cir. 2001). The district court may reopen the suppression hearing to take additional evidence. *United States v. Chavis*, 48 F.3d 871, 873 (5th Cir. 1995). Once the record has been supplemented, the case shall be returned to this court for further proceedings. *See Runyan*, 275 F.3d at 468. We do not reach the other issues raised in this appeal at this time.

## III.

We REMAND to the district court with instructions that, within sixty days after the entry of this remand, it provide a supplemental order setting forth its findings as to whether Arellano-Banuelos was in custody under *Miranda v. Arizona.* We retain jurisdiction over this appeal.

---

[3]     We note that *Miranda* violations are subject to harmless error analysis. *See Harryman v. Estelle*, 616 F.2d 870, 875 (5th Cir. 1980). But it is the government's burden to establish that a constitutional error is harmless beyond a reasonable doubt. *See United States v. Jackson*, 636 F.3d 687, 697 (5th Cir. 2011); *United States v. Akpan*, 407 F.3d 360, 377 (5th Cir. 2005). Here, the government has offered no argument that the denial of the motion to suppress was harmless.