# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60274

United States Court of Appeals
Fifth Circuit

**FILED**

September 11, 2019

Lyle W. Cayce
Clerk

STEPHEN DANIEL MONTALTO,

Petitioner - Appellee

v.

MISSISSIPPI DEPARTMENT OF CORRECTIONS; PELICIA HALL, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS,

Respondents - Appellants

Appeal from the United States District Court
for the Southern District of Mississippi

Before DAVIS, HIGGINSON, and WILLETT, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Mississippi inmate Stephen Montalto filed a § 2254 petition for habeas relief seeking reinstatement of his earned-release supervision (ERS) and trusty time. Montalto alleged that the Mississippi Department of Corrections (MDOC) had groundlessly revoked his ERS and trusty time in violation of due process. The district court ordered respondents MDOC and Commissioner Marshall Fisher to produce transcripts relevant to MDOC's revocation of Montalto's ERS and trusty time. Respondents, through the Mississippi Attorney General's Office, informed the district court that no such transcripts

existed. Eventually, respondents clarified that the relevant proceedings had been recorded, but that the audio recordings were lost or destroyed.

The district court dismissed the petition for failure to exhaust state remedies and denied Montalto's unopposed motions for sanctions and contempt. Nevertheless, the district court criticized MDOC and its counsel for disregarding orders for production and not properly investigating the circumstances of Montalto's revocations. Respondents filed a motion to amend, arguing that the district court's criticism was unfounded and requesting the district court to amend its order under Rules 52(b) and 59(e). The district court denied the motion. Respondents timely filed a notice of appeal as to portions of the district court's order that criticized counsel, as well as the district court's denial of their motion to amend.

Our court has held that judicial criticism amounting to an actual finding of attorney misconduct is directly appealable. In this case, we are unable to determine whether the district court made actual findings of professional misconduct. Mindful that "one's professional reputation is a lawyer's most important and valuable asset," *Walker v. City of Mesquite, Tex.*, 129 F.3d 831, 832 (5th Cir. 1997), we remand and instruct the district court to clarify its findings, if any, as to counsel's professional misconduct.

I.

In September 2008, Montalto pleaded guilty to aggravated assault and kidnapping and was sentenced to serve twenty years in MDOC's custody. *See Montalto v. State*, 119 So. 3d 1087, 1092 (Miss. Ct. App. 2013). Montalto's kidnapping offense was based on his abduction of a two-year-old child and was therefore a sex offense under Mississippi law. Miss. Code Ann. § 45-33-23(h)(i).

On December 20, 2014, MDOC released Montalto from incarceration on earned-release supervision. Miss. Code. Ann. § 47-5-138. ERS is a program under which inmates may secure an early release but "retain inmate status

and remain under jurisdiction of the department" until their sentences expire. *Id.* Inmates who violate a condition of ERS may be subject to revocation and re-incarceration. *Id.* In anticipation of being released on ERS, on December 4, 2014, Montalto had signed a sex offender registration form. On December 5, 2014, MDOC had issued Montalto a "Certificate of Earned Release Supervision" indicating that Montalto was approved to live with his mother in Brandon, Mississippi.

On December 22, 2014, Montalto attempted to register as a sex offender in Rankin County but was informed that he could not stay at his mother's residence. Rankin County notified MDOC that Montalto's proposed address failed to comply with sex offender guidelines. Assisted by Hinds County officers, Montalto secured housing that same day at the Billy Brumfield House and on January 7, 2015, moved to the Exodus House. However, on January 9, MDOC issued an arrest warrant and a Rule Violation Report (RVR) based on the fact that Montalto's initial "[r]esidence was denied by Rankin County Sheriff's Office on the law of Sex Offender Registry." Montalto was reincarcerated that day.

On January 23, Montalto learned that his "trusty status" had been revoked. Trusty status is a classification that allows offenders to receive sentence reductions for participating in approved programs such as classes or work projects. Miss. Code. Ann. § 47-5-138.1. Montalto had accumulated several years of trusty time, for instance, by working as a library orderly and taking classes.[1] On January 29, Montalto attended a revocation hearing where he was found guilty of the housing violation alleged in his RVR. Montalto

---

[1] In contrast to ERS, which allows inmates to serve portions of their sentence on release, trusty time "reduce[s] the actual sentence, by virtue of statutory language that is notably absent from the fifteen percent earned time allowed under section 47–5–138(5)," the ERS provision. *Peters v. State*, 935 So. 2d 1064, 1066 (Miss. Ct. App. 2006).

No. 18-60274

appealed to MDOC's Administrative Remedy Program, which informed him that his kidnapping offense was a sex offense that rendered him ineligible for ERS or his years of previously accumulated trusty time.[2] *See* Miss. Code. Ann. § 47-5-139 (providing that an inmate "convicted of a sex crime" is not eligible for ERS); Miss. Code. Ann. § 47-5-138.1 (providing that an inmate "convicted of a sex crime" is not eligible for reduction of sentence based on trusty status).

## II.

In April 2015, proceeding pro se, Montalto filed suit under 42 U.S.C. § 1983 alleging that MDOC's actions violated due process and seeking, among other relief, reinstatement of his trusty time and ERS. Montalto's complaint was liberally construed as a petition for habeas relief under 28 U.S.C. § 2254, and a new case was opened in June 2015 to address the habeas claims separate from Montalto's § 1983 claims. Only Montalto's habeas petition is before us in this appeal.

### A. *The magistrate's production order*

On September 23, 2015, the magistrate issued an order requiring respondents to file a responsive pleading within twenty days. The order directed respondents to file "full and complete transcripts of all proceedings arising from the charge of violation of Earned Release Supervision against Petitioner, as well as the revocation of Petitioner's earned time credits."

Respondents, through the Mississippi Attorney General's Office, timely filed a motion to dismiss, arguing that federal due process does not protect an inmate's interest in trusty status and ERS, and that Montalto had failed to exhaust state remedies. The motion to dismiss did not assert that because

---

[2] Respondents recognize that "at least some MDOC employees were aware that Montalto was a sex offender prior to his erroneous release in December of 2014," and say it is "unclear" why Montalto was nevertheless released or allowed to accumulate trusty time between 2008 and 2014.

Montalto was a sex offender, he was never entitled to trusty status or ERS. Montalto's traverse argued that the transcript of his revocation hearing would lend support to his due process claims. Montalto explained that his revocation hearing had been "taped and logged under CNQ side B," and asked the magistrate to "hold the Respondents in contempt of Court for willful failure to comply with its order" to produce transcripts.

On August 3, 2016, the magistrate issued a report and recommendation. The magistrate recommended granting respondents' motion to dismiss because Montalto had failed to state a constitutional claim and had not exhausted state remedies. "Likewise, Petitioner's Motion for Adjudication of Contempt . . . should be denied." Montalto timely filed objections to the R&R, again arguing that transcripts were relevant because they would show that "the finding of guilt had no factual basis" and "that [Montalto's] housing was not even considered in finding him guilty" of a rule violation.

*B. The district court's October 2016 production order*

On October 19, 2016, the district court issued its first order in the case. The district court noted that respondents "did not comply" with the magistrate's order to file "full and complete transcripts." "Therefore, it is ordered that defendants file full and complete transcripts of all proceedings arising from the charge of violation of Earned Release Supervision against Petitioner, as well as the revocation of Petitioner's earned time credits, by the close of business on October 31, 2016."

On October 24, Frances Croft, the lead attorney for respondents, emailed MDOC staff,

> I am attaching an order from the District Court regarding STEPHEN DANIEL MONTALTO, # 142736. I need to provide the court with copies of any documentation related to his loss of

## No. 18-60274

Earned Release Supervision . . . and/or revocation of his earned time credits.[3]

In this email, Croft asked for "documentation" and did not expressly request transcripts or recordings, despite (1) Montalto's November 2015 traverse referring to "Tape CNQ Side B," and (2) the district court's express focus on "full and complete transcripts" in its October 19, 2016 order. MDOC sent back Montalto's timesheet and revocation packet. In these emails, MDOC did not expressly inform Croft that there were no transcripts or recordings.[4]

Croft attempted to file a response to the district court's October 2016 production order. However, Croft did not properly upload the response to the district court's docket. She filed only the first page of her intended response at Docket Number 23. Croft did successfully file two exhibits—the timesheet and revocation packet sent to her by MDOC. The one-page filing at Docket Number 23, as respondents later acknowledged in their post-judgment motion to amend, contained no argument, did not reference the attached exhibits, and lacked a certificate of service.[5]

On November 8, 2016, Montalto filed another motion to hold respondents in contempt. Montalto attached MDOC Policy 18-01-01, which states of revocation hearings, "The hearing will be recorded and a record of the

---

[3] A print-out of this email was submitted to the district court as an exhibit attached to the respondent's motion to amend. The print-out does not indicate whether Croft included the district court's October 19, 2016 order as an email attachment.

[4] In respondents' motion to amend, respondents rely on these emails to argue that "Croft emailed [MDOC] . . . setting forth this Court's request for 'full and complete transcripts.'" However, the emails show only that Croft requested "documentation." Respondents submit that "Croft had contacted MDOC officials, including the officer who issued the RVR and was advised that no transcript of the hearing existed." But there is no declaration from Croft or the relevant MDOC officials to support that statement. Respondents have never clarified whether, given Montalto's November 2015 reference to "Tape CNQ Side B," Croft ever asked about possible recordings.

[5] However, Montalto's response indicates that Montalto received the full intended response.

6

proceedings will be maintained for a minimum of three (3) years." Montalto also noted that his November 2015 traverse had already informed respondents that his revocation hearing was recorded on "Tape CNQ Side B." Montalto again argued that transcripts were important because they would show that "[t]he issue of him not having proper housing was never addressed at the hearing." Respondents did not respond to Montalto's filing.

*C. The January 2017 omnibus hearing*

On December 22, 2016, the district court sua sponte set an "Omnibus Hearing" regarding "all pending motions" for January 6, 2017. Shortly thereafter, respondents notified the district court that Croft was leaving the Mississippi Attorney General's Office and that Lesley Miller would now be lead counsel. The district court continued the motion hearing to January 20, 2017, and entered an order directing respondents to comply with its October 2016 order for production of transcripts, "by providing the Court with full and complete transcripts of all proceedings arising from the charge of violation of Earned Release Supervision against Petitioner, as well as the revocation of Petitioner's earned time credits. . . . If no such transcripts exist, the State shall bring persons responsible for making a record of the proceeding(s) to the hearing on 1/20/2017."

On January 13, 2017, respondents filed a response to the district court's production order. Respondents asserted that "[r]espondents have been informed there exists no transcript of Montalto's ERS revocation hearing," and cited to "ECF doc. 23, incorporated by reference."[6] Respondents informed the court that Miller had asked the MDOC employee who conducted Montalto's ERS revocation hearing to locate a recording, if it existed.

---

[6] As noted, however, the filing at Docket Number 23 was an incomplete, single-page document. Respondents did not acknowledge that Docket Number 23 was improperly filed or provide the district court with the intended filing until their post-judgment motion to amend.

No. 18-60274

At the omnibus hearing, Miller appeared on behalf of respondents and explained that the Mississippi AG's office typically does not submit transcripts or records to accompany a motion to dismiss. In Montalto's case, Miller argued that "the entire revocation hearing was irrelevant as he had been released by mistake. . . . He was never entitled to earned release supervision in the first place." Cooper, the hearing officer present at Montalto's revocation hearing, then testified that the revocation hearing "was not supposed to have been held anyway. . . . [H]e was only supposed to be reclassed and go through classification and get processed." Cooper showed the district court paperwork indicating that Montalto had received, besides a revocation hearing, a reclassification hearing conducted by another case manager. The district court expressed surprise that respondents had, until this point, never informed the court of a reclassification hearing. Miller explained that she had thought the district court was only interested in the revocation hearing.

Cooper stated that she could not locate the recording for Montalto's revocation hearing because "we moved three times since we had this hearing. And we went to each building or whatever, they went in and they condemned the building and the paperwork and everything in there, it was—I can't explain where it went." Cooper suggested that a tape of Montalto's separate reclassification hearing, however, might still exist.

At the end of the hearing, the district court explained that it would like to know more about Montalto's reclassification hearing before it ruled on any motions, including Montalto's "original motion for contempt . . . [and] also his objection to the magistrate judge's R&R." The district court issued an order requiring respondents to "produce full and complete transcripts, documents, video recordings, audio recordings, and any other records" pertaining to the revocation hearing and any reclassification hearings.

In February 2017, the respondents informed the district court that MDOC had been unable to locate either Montalto's RVR hearing tape, or Montalto's reclassification hearing tape. The district court later acknowledged at a hearing that it had ordered "the state of Mississippi to produce and disclose certain records. And the State I believe has complied with that request, I guess, as best as it could."

*D. The district court resolves pending motions*

In September 2017, the district court entered an order adopting the magistrate's R&R, granting respondents' motion to dismiss, and denying Montalto's unopposed motions for adjudication of contempt and sanctions.

Despite denying Montalto's motions for contempt and sanctions, the district court found "that the conduct exhibited during these proceedings justify a warning. Because this officer of the court had a meritorious defense to Montalto's case (e.g., failure to exhaust), it is as if she simply felt no need to comply with the Court's directives and orders. This is unacceptable."

The district court faulted respondents for (1) failing to seek recordings of Montalto's hearings until January 2017 and (2) offering shifting rationales for Montalto's reincarceration. On (1), the district court noted that respondents had failed to produce records in response to the magistrate's September 2016 order and failed to "even acknowledge" the district court's October 2016 production order. Even though Montalto had informed the respondents in November 2015 that recordings were supposed to exist per MDOC policy, respondents had not sought recordings until January 2017. The district court specifically called out Assistant Attorney General Jerrolyn Owens for stating at the January 2017 omnibus hearing, "But there was never a transcript, and that's what the court's order ordered us to bring. There was never one." In the district court's view, the three orders for production "made clear the Court's interest in any and all recordings of the underlying hearing."

No. 18-60274

On (2), the district court said that respondents had "submitted patently false statements to the Court" and "adopted false positions" with "nonchalance." The district court found that initially, respondents had stated that Montalto's ERS was revoked on January 29, 2015, based on housing violations. Then, at the January 2017 omnibus hearing, respondents had asserted that Montalto's January 29 revocation hearing was irrelevant in light of a later reclassification hearing. In actuality, the district court found, "A simple review of Montalto's paperwork—which required four Court Orders for the State to produce—revealed that reclassification took place on January 23, 2015, ostensibly obviating the RVR hearing."

Overall, the district court concluded that "[t]he Attorney General's Office is treating habeas petitions as if they are something to be beaten back, rather than taken seriously and investigated." "The attorneys for the State are well advised to revisit *A Lawyer's Creed*."

The district court entered final judgment for respondents in October 2017. Respondents timely filed a motion to amend based on Rules 59(e) and Rule 52(b). Though nominally filed on behalf of respondents MDOC and Fisher, the motion made clear that relief was sought by respondents' attorneys regarding the "Court's warnings and declaration about counsel for respondent." The attorneys contended that the record did not support a finding of bad faith and asked the court to "take a fresh look at this case." The attorneys acknowledged that they had failed to properly file a response to the district court's October 2016 production order, and that they had never directly responded to Montalto's motions for contempt and sanctions. They conceded that their compliance with court directives may have suffered due to "misunderstanding and/or miscommunication," but "in no way were counsel's intentions or actions to be in willful disregard for compliance with the Orders of this Court."

10

No. 18-60274

In March 2018, the district court found that the attorneys had failed to identify manifest errors of law or fact and denied their motion to amend. Respondents timely filed a notice of appeal as to (1) the portions of the district court's September 2017 order "finding that the State's attorneys violated the oath of office and engaged in misconduct" and (2) "the March 13, 2018, Order denying respondents' motion to alter or amend the judgment." Again, though the notice of appeal was nominally filed on behalf of respondents MDOC and Fisher, it is only the attorneys who seek appellate review.

Montalto filed a pro se brief in opposition. We appointed pro bono counsel Jason Steed as special respondent and heard oral argument from the attorneys and Steed.

### III.

"The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). Though nonparties are generally advised "to seek intervention for purposes of appeal," *id.*, we have not required party attorneys to be joined as intervenors in order to appeal judicial criticism of attorney conduct. Not all judicial criticism, however, can be appealed. In accord with other circuits, we have held that a statement "akin to a negative comment or observation from a judge's pen about an attorney's conduct or performance . . . does not present an appealable issue." *United States v. El-Mezain*, 664 F.3d 467, 579 (5th Cir. 2011) (internal quotation marks omitted). Attorneys may, however, appeal "an actual finding of professional misconduct." *Id.*

*Walker v. City of Mesquite*, 129 F.3d 831 (5th Cir. 1997), is the seminal case in our circuit discussing appellate review of district court criticism of lawyers. In *Walker*, we explained that "monetary penalties or losses are not an essential for an appeal" because "one's professional reputation is a lawyer's most important and valuable asset." *Id.* at 832. Though *Walker* emphasizes

that attorneys must be able to defend their professional reputations "when necessary," *Walker* holds only that "monetary liability or other punishment" is not "a requisite for the appeal of a *court order finding professional misconduct*." 129 F.3d at 832–33 (emphasis added). *Walker* itself does not set out a precise rule of decision on when trial court admonition amounts to an "order finding professional misconduct." *Id.*

In some cases, it may be clear that "actual finding[s] of professional misconduct" are at issue because the district court expressly finds that the attorney "violated a legal or ethical duty or rule." *El-Mezain*, 664 F.3d at 579. For instance, in *Walker*, we concluded that it would be appropriate to review the lower court's order finding that the appealing attorney was "guilty of blatant misconduct." 129 F.3d at 832. The lower court had expressly concluded that the attorney had violated the Northern District of Texas's local "standards of litigation conduct for attorneys appearing in civil actions."[7] Since *Walker*, we have allowed a government prosecutor to appeal a district court's "findings that she committed *Giglio*, *Brady*, and *Napue* violations." *United States v. Dvorin*, 817 F.3d 438, 444 (5th Cir. 2016). Similarly, we have reviewed disqualification orders, reasoning that disqualification is a "sanction" that "must not be imposed cavalierly." *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 300 (5th Cir. 2009); *see also F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) ("[D]isqualification cases are governed by state and national ethical standards adopted by the court." (citation omitted)).[8]

---

[7] *Walker, et al. v. City of Mesquite*, No. 3:85-cv-2320 (N.D. Tex. Dec. 12, 1996) (order on misconduct findings) (citing *Dondi Properties Corp. v. Commercial Savings & Loan Assn.*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc)).

[8] We have also held that a monetary sanctions order may be appealed even if the monetary sanction is mooted by the parties' settlement agreement. *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 640 (5th Cir. 2008).

No. 18-60274

On the other end of the spectrum, it may be clear that the district court made no finding of misconduct. For instance, "a referral of attorney conduct to a disciplinary committee, absent a specific finding of misconduct, is not a sanction that confers standing to appeal." *Zente v. Credit Mgmt., L.P.*, 789 F.3d 601, 605–06 (5th Cir. 2015). *Cf. United States v. Woodberry*, 405 F. App'x 840, 842–43 (5th Cir. 2010) (recommendation of referral accompanied by civil contempt finding and monetary sanctions was reviewable).

In the middle, we have determined appealability by carefully examining the context in which the challenged statements were made. In *El-Mezain*, the district court had found in a written order that an attorney displayed a "complete lack of candor and a failure to diligently inform the Court of a material fact." *Id.* We concluded that appellate review was unavailable because "[t]he district court was not engaged in a disciplinary hearing, nor did the court expressly conclude that [the attorney] violated a legal or ethical duty or rule." *Id.* In *Omega Claims Sols., Inc. v. N'Site Sols., Inc.*, 450 F. App'x 402 (5th Cir. 2011), we found no appealable sanction where "[t]he district court expressly stated it was 'exercising its discretion not to order any sanctions at this time,'" even though the district court had concluded the attorney's "actions were 'sufficient to warrant the sua sponte imposition of Rule 11 sanctions.'" *Id.* at 403 (cleaned up).

Our post-*Walker* caselaw reflects that we have taken care to limit the circumstances in which trial court commentary about attorney conduct may be appealed. Our reticence is shared by our sister circuits, several of which have adopted substantially more restrictive approaches. For instance, the First and Ninth Circuits allow appeal of judicial statements only if they are "expressly identified as a reprimand." *In re Williams*, 156 F.3d 86, 92 (1st Cir. 1998); *United States v. Talao*, 222 F.3d 1133, 1137 (9th Cir. 2000). Even more starkly, the Seventh Circuit limits attorney appeals to "situations involving monetary

13

sanction only." *Seymour v. Hug*, 485 F.3d 926, 929 (7th Cir. 2007). To be sure, we have declined to condition appealability on an expressly identified reprimand or monetary sanctions. However, we share the First Circuit's concern that trial judges "must retain the power to comment, sternly when necessary, on a lawyer's performance without wondering whether those comments will provoke an appeal." *Williams*, 156 F.3d at 92.[9] We also agree with the Seventh Circuit that appellate courts should disfavor crafting rules of appealability that "result in a breathtaking expansion in appellate jurisdiction." *Seymour*, 485 F.3d at 929.

## IV.

As discussed, whether the attorneys may appeal the district court's statements turns on whether the district court made actual findings of professional conduct. We are unsure whether the district court did make such findings. *Cf. El-Mezain*, 664 F.3d at 579 (closely analyzing "contested language" to assess whether district court "stopped short of an actual finding of professional misconduct").

Most significantly, the challenged statements here are contained in the district court's denial of Montalto's multiple, unopposed motions for contempt and sanctions. In concluding its order, the district court wrote, "Petitioner's motions for adjudication of contempt are denied. Petitioner's motion for sanctions is denied." Those statements are unambiguous. Elsewhere, the district court clarified that its comments were intended to be a "warning." The district court's statements, though critical, therefore appeared to be the basis for the district court's decision *not* to impose sanctions or to find the attorneys

---

[9] *Williams* also noted "the reality that appeals from findings [about attorney conduct] often will be unopposed." *Williams*, 156 F.3d at 91. Unusually, in this case, Montalto filed a pro se response. The court also had the benefit of additional briefing submitted by special respondent Steed.

in contempt. We have not located, and the attorneys have not identified, any case where an appellate court reviewed comments about attorney conduct contained in a *favorable* order expressly *denying* sanctions. *Cf. United States v. Fletcher ex rel. Fletcher*, 805 F.3d 596, 602 (5th Cir. 2015) (noting that courts have recognized only a "handful of situations" where a party may be "sufficiently aggrieved by a favorable judgment to appeal it." (citation omitted)).

In addition, much of the district court's criticism appears to be directed specifically at respondent MDOC—not at the attorneys. Indeed, the district court acknowledged in its own order that "this officer of the court had a meritorious defense to Montalto's case." The record indicates that at the final omnibus hearing, the district court recognized the attorneys had complied with its later orders for production "as best as [they] could." That acknowledgement is significant in part because, as the district court well knew, Miller became lead counsel for respondents only after the district court's October 2016 order for production. Viewed in that light, the district court's statement that "*[t]he State* changed its position multiple times, alleging inconsistent facts" (emphasis added) seems to be directed more at MDOC than its attorneys. Throughout the same section, the district court distinguished several times between MDOC and its attorneys. For instance, the district court explained that at the January 2017 omnibus hearing, "Attorney Lesley Miller and Officer Cooper both stated that MDOC first became aware that Montalto was a sex offender and ineligible for early release on January 29, 2015." The transcript for that hearing makes clear that Miller's statements were based on what she had been told by MDOC, and that MDOC had not originally provided the Mississippi Attorney General's Office with complete records on Montalto's reclassification.

However, we take seriously the attorneys' concern for their reputations and the reputation of the Mississippi Attorney General's office. A reader unfamiliar with the complex procedural history of the case might view the district court's comments as misconduct determinations with respect to the attorneys themselves. Because the district court's commentary can be interpreted in multiple ways, we have an inadequate basis for appellate review. *See, e.g.*, *United States v. Runyan*, 275 F.3d 449, 468 (5th Cir. 2001); *United States v. Arellano-Banuelos*, 912 F.3d 862, 869 (5th Cir. 2019). We remand for the district court to issue a supplemental order setting forth actual findings, if any, as to professional misconduct by the attorneys. *Id.* Once the record has been supplemented, the case shall be returned to this court for further proceedings. We do not reach the other issue raised in this appeal at this time.

## V.

We REMAND to the district court with instructions that, within ninety days after the entry of this remand, it provide a supplemental order setting forth actual findings, if any, as to professional misconduct by the attorneys. We retain jurisdiction over this appeal.

16